ROBERT SALLEE, Respondent, v. WILLIAM ARNOLD *et al.*, Appellants.

*Guardian and Ward.*—The possession of the goods and chattels of the ward by the guardian, is the possession of the ward. He acts in a merely fiduciary capacity, and is the agent of the ward in all matters relating to the trust property.

*Husband and Wife.*—Where a female ward marries, the marital rights of the husband attach to the goods and chattels of the ward in the possession of the guardian, and he may demand and recover the same although the wife die before he obtain the actual possession.

*Bailment.*—If the guardian hire out the slaves of the ward, the possession of the bailee is, as between guardian and ward, the possession of the guardian.

Sallee v. Arnold.

*Appeal from Callaway Circuit Court.*

*Knott & Hough*, and *Ryland & Son*, for appellants.

I. The question in this case is whether the slaves of an infant *femme*, which have been hired out by her guardian before the marriage, pass to her husband *jure marito* where the marriage and the death of the wife both take place during the term, and while the slaves are *de facto* in the possession of the lessee ; and the affirmative of this proposition can only be sustained on the hypothesis that the possession of the guardian is the possession of the ward, and that the possession of the lessee is the possession of the guardian, even where the hiring is for a definite time and upon a valuable consideration. This theory is utterly incapable of support in reason or law, the well settled principle being that the general property draws to it possession *only in cases where there is no intervening adverse right of enjoyment;* and when the general owner has conveyed to another the exclusive right of present enjoyment and possession of a personal chattel, the *possession is in the lessee or bailee,* and he may maintain trespass even against the owner of the reversionary interest for an injury done to the property before the expiration of his lease. (2 Gr. Ev. § 614 ; ibid, § 616 ; 1 Ch. Pl. 169 ; 8 Johns. 435 ; 2 Pick. 122 ; 11 Johns. 156 ; 3 Scammon, 10 ; Anderson v. Kincheloe et al., 30 Mo. 520.)

This principle, that the possession of a personal chattel hired to one for a certain term, and upon a valuable consideration, is the possession of the bailee or lessee, and not of the owner of the reversionary interest, is supported by the simplest deductions of common reason; for the bailee who has hired the property for a price, has a vested title to the beneficial use and enjoyment of it, for which he has contracted and paid. Recognizing the correctness of the doctrine that the possession of the hired chattel is in the lessee for the term, Mr. Justice Ewing, in the case of Anderson v. Kincheloe & Dickerson, above cited, in which it was decided that the lessee of slaves for a year could transfer possession to

another, and that other maintain an action against the owner of the reversionary interest for depriving him of possession of them, remarks that, " the hiring for a year being shown, and the *delivery of possession pursuant thereto* being admitted, Gratz (the lessee of the slaves) *was the owner of the slaves* for that period, and held them with all the rights incident to that kind of special ownership."

II. In order to entitle a party to maintain trespass for an injury to property he must have *possession,* for the very gist of the action is the injury to plaintiff's possession; but it is settled beyond controversy that, if the general owner part with his possession to a bailee, and the bailee have the right to the exclusive use of the thing at the time the injury was committed, the *general owner cannot support trespass.* Therefore, the general owner is regarded in law as not having possession. (1 Ch. Pl. 169; Roussin v. Benton, 6 Mo. 592; 8 Pick. 235; 4 T. R. 489; 7 ibid, 9; 5 Vt. 274; 9 Cowen, 687; 9 Metcalf, 233; 1 Johns. 511.)

III. If, then, the doctrine as laid down in the authorities be correct, that the possession of the lessee or bailee of a personal chattel who has the right to the exclusive use thereof during the time for which he has hired it, is *not* the possession of the general owner, it follows that the possession of Nunnelly, the bailee in this case, was *not* the possession of Lydia Ann Swearingen, nor of the guardian Arnold. Even granting it to be true that the possession of the guardian is the possession of his ward, but that she had simply a right to possession in reversion, and further, that the cases of Whitaker v. Whitaker, 1 Dev. 310, and Granbury v. Mehoon, ib. 456, relied upon by respondent, are not authority in this case, because they proceed solely upon the erroneous theory that the possession of the lessee or bailee entitled to the exclusive use of the slaves, is the possession of the general owner. The other cases relied upon by respondent are not analagous. There had been no intervention of an adverse right of enjoyment in either of them.

IV. The possession of the slaves in controversy being in

Nunnelly, (the lessee,) and not in Lydia Ann Swearingen at the time of her marriage, and not having been reduced to possession by Sallee, her husband, before her death, but remaining until that time in Nunnelly, Sallee has no right to them, for marriage is a gift to the husband only of such of her personal estate as is in possession of the wife; and as to her choses in action, or mere rights to receive money or property, the law only gives the husband a right to them on condition that he reduce them to possession during coverture. (Leakey v. Maupin, 10 Mo. 372; Wood v. Simmons, 20 Mo. 370.)

V. The slaves in controversy were not only never in possession of Sallee during his wife's life-time, but he did not even have a present right of action to recover them; the right of action was future, and would necessarily remain so until the expiration of Nunnelly's lease. (See cases of Walker v. Walker, 25 Mo. 367; Leakey v. Maupin, 10 Mo. 368; Wood v. Simmons, 20 Mo. 363.)

*Ansell* and *Gardenhire*, for respondents.

On the facts agreed the law is with the plaintiff—

I. Because personal property of a female ward in the possession of her guardian, is not a chose in action but property in the possession of the ward, and on her marriage vests *eo instanti* in the husband. (Chambers v. Perry, 17 Ala. 726; Magee v. Toland, 8 Porter's Ala. 36.)

II. The fact that personal property is held by the guardian in common for several wards does not reduce the interest of each to a chose in action; but as to each, it is regarded as property in possession. (17 Ala. 726.)

III. Where personalty remaining in the hands of a former guardian of a femme covert came into the possession of her husband, who was her administrator after her death, it was held that the marital right attached. (Davis v. Rhame, 1 McCord's Ch. 191, 193.)

IV. Where the slave of a femme sole was hired for a year, during which time she married, and her husband died, the

slave was held to vest in the personal representatives of the husband. (Whitaker v. Whitaker, 1 Dev. 310; Granbury v. Mehoon, 1 Dev. 456; Pettijohn v. Bensley, 4 Dev. 512.)

V. Where the wife before marriage was a joint tenant of slaves, which went into the possession of her co-tenant in the wife's life-time, *held*, that this was such a possession by the wife as that the marital rights of her husband would attach, the possession of one joint tenant being the possession of another. (Burgess v. Heape, 1 Hill's Ch., S. C., 404.)

VI. Marriage is, by law, an unqualified gift to the husband of all the personal estate of the wife in her possession at the time of its taking place; and if he should die an hour after the marriage, having received a large personal estate from the wife, all that estate, except what our law allows to her as dower, would go to the kindred of her husband, and not to the wife. But as to choses in action, or mere rights to receive money or property from another, the law only gives the husband a qualified right to them, viz., on condition that he reduces them to possession during coverture; and if he fails to do this, if the wife survive, she will be entitled to them. (Leakey, adm'r, &c. v. Maupin, 10 Mo. 372.)

VII. If personal property of the wife, other than choses in action, be in such a situation that the husband may lawfully take it into his hands at any moment, this is a sufficient reduction into possession, although he should not take it into his actual custody. (Walker v. Walker, 25 Mo. 367.)

VIII. A husband is not entitled under our statutes to the choses in action of his wife not reduced into possession during her life. As where the wife, being entitled to a distributive share of her father's estate, died before the same was received by the husband, he is not entitled to such share, but the same will go to her heirs. (Gillett v. Camp, 19 Mo. 404.)

IX. In the case of Walker's administrator against Walker, the court remarks: "As to the point that the property, other than choses in action, never was reduced into possession during coverture, we are of the opinion that it is unsustained by the law arising from the facts of the case. In contempla-

tion of law, property is reduced into possession when it is in such a state that the husband can lawfully take it into his hands if he will. It is not necessary that he should have actually taken it into his custody; if he has a right to do so at his will, it is enough," &c. If the property was in the possession of the wife, then the possession of the wife was the possession of the husband. (Walker's adm'r v. Walker, 25 Mo. 375.)

X. Where a father by will gave to his son a slave until the slave attained the age of twenty-one years, and the remainder of the life of the slave to his daughter, then a married woman; held, that the right of the husband to the slave was perfect on the assent of the executor to the legacy; that the possession of the tenant of the particular estate was the possession of the tenant in remainder, and that the right to the slave survived to the husband upon the death of the wife before the termination of the particular estate. (Pitts v. Curtis, 4 Ala. 350; 3 Litt. 275, 283–4.)

XI. Personal property is divided into things in possession or in action, and property in things in possession is either absolute or qualified.

XII. A bailment is a qualified, limited or special property in a thing capable of absolute ownership.

Neither the bailor nor the bailee of a personal chattel has an absolute property in the chattel. The property of both is qualified, and each of them is entitled to his action if the goods be damaged or taken away—the bailee on account of his possession, and the bailor because the possession of the bailee is immediately his possession.

XIII. A chose in action is any right to damages, whether arising from the commission of a tort, the omission of duty, or the breach of a contract. (Magee v. Toland, 8 Porter's Ala. 36.)

XIV. The right of a husband in the slaves of his wife, which are hired out at the time of the marriage, is not a mere chose in action. She was the general owner of the property, in which the hirer has a mere special interest. Upon the mar-

riage, the title is vested in the husband, if not absolutely, at least *sub modo;* so that upon the death of the wife, before the termination of the interest of the bailee on hire, he became entitled to it as survivor. (Morrow v. Whitesides, 10 B. Mon. 412 ; Banks v. Marksbury, 3 Litt. 275, 283–4 ; 10 B. Mon. 412.)

XV. Possession of lands by a guardian in socage is the possession of the ward ; the possession of the bailee is the possession of the bailor, and the possession of the guardian is the possession of the ward.

The possession of the guardian of an infant female ward is the possession of the ward ; and if the ward marry, the possession, *eo instanti,* is transferred to the husband, and the bailment is then in possession of the husband in point of law, as much as it could afterwards be by actual manucaption.

The actual enjoyment of a chattel which accrues to the wife before marriage, is not necessary to vest her interest in the husband.

If a chattel be found and not converted to the use of the finder, or if it be hired, or loaned, or otherwise bailed, it does not thereby become a chose in action ; and if it belong to a woman who marries, her right immediately vests in the husband—at least so far as, if she dies, it will survive to him. (8 Porter's Ala. 36, &c.)

BAY, Judge, delivered the opinion of the court.

Plaintiff brought suit against the defendants in the Callaway Circuit Court to recover possession of seven slaves—Prudence, Greene, Creed, Amanda, Laura, Margaret, and an infant, name unknown—of the value of thirty-two hundred dollars. The cause was submitted upon an agreed statement of facts, as follows :

" Prudence, Greene, and Creed, originally belonged to the estate of Thomas Swearingen, deceased, of Montgomery county, in this State, who died in the year 1850. Letters of administration were taken out upon his estate, and in 1854 commissioners were appointed by the County Court of Mont-

gomery county to divide the slaves of the intestate among his widow and heirs, and the slaves Prudence, Greene and Creed were assigned to Lydia Ann Swearingen, a daughter of the said Thomas Swearingen.

"William Arnold, one of the defendants, was the guardian of the person and estate of the said Lydia Ann, she being a minor, and took possession as such guardian of said slaves, Prudence, Greene and Creed. Arnold was also guardian of two other minor heirs of the said Thomas Swearingen, and took possession of the slaves assigned them by the commissioners at the same time, and gave one bond. The other slaves mentioned are the children of Prudence, born since Arnold took possession. On the 1st of January, 1855, Arnold, as guardian of Lydia Ann, hired said slaves to Nunnelly, one of the defendants, for one year, for their victuals and clothes.

"On the 15th of May, 1855, the plaintiff married the said Lydia Ann, and on the 29th of August following she died. The slaves sued for were in the possession of the defendants before and at the time of the commencement of the suit, and while so in possession of the defendants and before the commencement of the suit were demanded by the plaintiff of defendants and they refused to give them up."

Upon the above statement of facts, the court found for the plaintiff; whereupon, defendants filed their motion for a new trial, on the ground that the finding of the court was not warranted by the facts, which motion was overruled and defendants appealed to this court.

The question arising in this case upon the foregoing facts is, "What interest in the slaves did the plaintiff acquire by virtue of his marriage?" Was the interest of Lydia Ann, at the time of her marriage, property in possession, or was it a mere chose in action? If the former, then the marriage operated as a gift to the husband and the title vested in him; if the latter, then the husband only acquired by the marriage the right to reduce such chose in action into possession during

the coverture. Upon the determination of these questions depends the right of the plaintiff to recover in this action.

The elementary law writers define a chose in action to be a thing of which one has not the possession, or actual enjoyment, but only a right to it, or a right to demand it by action at law. (2 Black. Com. 396, 397.) Kent defines it to be a personal right not reduced to possession, but recoverable by suit at law. Thus it is said money due on a bond, note or other contract is a chose in action, for a property in the money vests whenever it becomes payable; but there is no possession till recovery by course of law, unless payment be voluntarily made. So damages for breach of covenant for detention of chattels, or for torts, come under the title of choses in action. If these are not reduced into possession by the husband during the coverture, it is clear he acquires no right to them.

In the case under consideration, we are of opinion that the right of Lydia Ann in the slaves was a chose in possession, and not a chose in action. The estate of Swearingen had been fully administered, and the slaves in controversy allotted to Lydia Ann by commissioners duly appointed for that purpose. Her distributive share had, moreover, passed into the hands of her guardian, and it is well settled that the possession of the guardian is the possession of the ward. He acts in a mere fiduciary capacity, and is the agent and representative of his ward in all matters relating to the trust property. Nor does the fact that he had hired the slaves for a year to Donnelly affect the question in anywise, for Donnelly was a mere bailee, and the possession of the bailee is the possession of the bailor. There was no adverse claim on the part of Donnelly. He had no property in the slaves, but a mere right to enjoy the use of them for a limited period. It was a right perfectly consistent with the claim and property of the ward. If we are right in these views, then the possession of Donnelly, in contemplation of law, was the possession of Arnold, the guardian, and the possession of the guardian was the possession of Lydia Ann, his ward; and

upon the marriage of Lydia Ann her possession was transferred to her husband, the plaintiff in this suit.

In this view of the law, we are amply sustained by authority. The case of Magee v. Toland, 8 Porter's Ala. 36, is directly in point, and in every feature identical with this. The controversy related to a slave, the property of one Jane Carnathan, a minor, which was in possession of her guardian, George Hays. On the 1st of January, 1835, Hays hired the slave to Magee for one year, and the slave was delivered to him. On the 11th of June, 1835, Jane intermarried with the plaintiff Toland, and in August following she died. Neither Jane or her husband ever had the *actual* possession of the slave. Upon this state of facts, the court held that the possession of Magee, the bailee, was the possession of Hays, the guardian, and the possession of Hays was the possession of his ward, Jane, and upon the marriage of Jane her possession passed, *eo instanti*, to her husband, and the property vested absolutely in him. The same doctrine is recognized in Chambers v. Perry, 17 Ala. 726 ; Sausing v. Gardner, 1 Hill, S. C., 191 ; 3 Litt., Ky., 275 ; 1 Wash., Va., 39 ; Davis v. Rhame, 1 McCord, Chy. R. 195 ; Armstrong v. Simonton's adm'r, 2 Murphy, N. C., 351 ; Morrow v. Whiteside's exec'r, 10 B. Mon. 411. In Sausing v. Gardner, 1 Hill, S. C., the court held that where a slave was allotted to the wife in part of her share of the estate, but left in the care of the executor, the marital rights of the husband attached, although he never had actual possession.

Such a concurrence of authority from States in which the institution of slavery exists, and in which cases of this kind so frequently occur, leaves but little doubt as to the correctness of the rule.

The other judges concurring, the judgment of the court below will be affirmed.