MARGARET COUGHLIN *et al.*, Respondents, *v.* EDMUND RYAN, Adm'r of the Estate of JOHANNA RYAN, deceased, Appellant.

1. *Husband and Wife — Right of Wife to her separate earnings.*—When a husband permits a wife to carry on business on her sole and separate account, all that she earns will be deemed to be her separate property, and disposable by her as such, subject to the claims of third persons properly affected by it.
2. *Husband and Wife — Proceeds of leasehold estates held by wife, how treated.*—Where the wife held certain leasehold estates, partly owned by her prior to marriage, and partly purchased afterward with money not derived from her husband, and was suffered by him, during the whole period of her coverture, in her own name, to pay taxes and ground rent of the leaseholds, and collect and deposit moneys derived therefrom, such proceeds must be treated as her separate property, accumulated by her own efforts, with the consent of her husband; and in event of her death without children, he will not be permitted to retain it as against her separate heirs.

*Appeal from St. Louis Circuit Court.*

*Morris & Peabody,* for appellant.

I.    The personal property of the wife, in possession of the husband before her death, goes to her husband absolutely at her death, as at common law.    (10 Mo. 368; 32 Mo. 532; 25 Mo. 367.)

II.    At common law, marriage amounts to an absolute gift to the husband of all the goods, personal chattels, and other personal estate of which the wife is actually or beneficially possessed at that time in her own right, and of such other goods and chattels

and personal estate as come to her during the marriage. (2 Story Eq. Jur., 2d ed., §§ 1402, 1403, 1405 ; 2 Kent Com., 10th ed., 135 ; 2 Blackst. Com. 435.)

III. The husband in this case was in possession of the money in question before his wife's death, because it issued from chattels real held by the wife, and the husband by law became possessed of the wife's chattels real upon marriage. (2 Kent Com. 133 ; 2 Blackst. Com. 434–5 ; Reeve Dom. Rel. 81, 94.)

IV. The husband was in possession of said money before the death of his wife, because the facts show that the same came to the possession of the wife during coverture, and the possession of the wife is the possession of the husband. (32 Mo. 532 ; 25 Mo. 367 ; 7 Pick. 65 ; 37 Ala. 536 ; 1 Hill., S. C., 191 ; 8 Porter, 36 ; 9 Vesey, Jr., 154.)

V. The husband was in possession of the money in question at the death of his wife, because the deposit of the same with a private individual constituted a bailment, and the possession of the bailee is the possession of the bailor. (Story Bailm. § 95 ; 1 Pars. Cont., 4th ed., 572–80 ; 32 Mo. 532 ; 8 Porter, 36.)

VI. This case does not come within the statute of 1857 (Sess. Acts 1857, p. 666), and, if it did, that statute could in no wise affect the rights of defendant to the money in question. The statutes of New York of 1848–9 (3 Rev. Stat. N. Y., 5th ed., p. 239, §§ 75–7) are as broad as the statute of 1857 ; and it is held that those statutes do not affect the husband's rights to his wife's personal property at her decease. (17 How. Pr. 243 ; 22 N. Y. 110 ; 24 N. Y. 372 ; 12 N. Y. 202 ; 35 Mo. 181 ; 17 Mo. 47.)

VII. The fact that the husband abandoned his wife cannot affect his rights to said money. (Bell v. Bell, 37 Ala. 536 ; Bell v. Bell, 36 Ala. 466 ; Molony v. Kennedy, 10 Sim. 254 ; Stewart v. Stewart, 7 Johns. Ch. 229–247 ; Code Ala. 325, § 5.)

VIII. From the facts of this case, it cannot be said that the money in question was for the separate and exclusive use and benefit of the wife, and that her husband was a mere trustee. (2 Story Eq. Jur., 2d ed., §§ 1380–4 ; 2 Swanst. 97–112 ; 9 Vesey, Jr., 369.)

IX. It is insisted that, upon the legal grounds above stated, the defendant is entitled to the money on deposit with Peter Richard Kenrick at the decease of his wife.

X. The court cannot consider the decision of the Circuit Court so far as it was adverse to plaintiffs, and to which they did not object, and from which they did not appeal. "It is only the objection which the appellant raises which can be considered an appeal. If a party admits to appeal he virtually assents to the judgment." (Bell v. Holford, 1 Duer, 58 ; Glassner v. Wheaton, 2 E. D. Smith, 352 ; Beach v. Raymond, *id.* 496 ; 18 N. Y. 368.)

XI. There is no separate property shown by this case to have been in the wife, to constitute which, it must appear clearly and unequivocally, by express words, or by necessary implication. (Rider v. Hulse, 24 N. Y. 379 ; Walker v. Walker, 25 Mo. 367.) If the case showed a separate estate, and thus by law the husband became the trustee of his wife, her separate property undisposed of at her death would vest in the husband. The separate property, in such case, being a mere creature of equity for the benefit of the wife, ceases at her death, and the husband becomes the absolute owner of the property, discharged of any trust. (Molony v. Kennedy, 10 Sim. 254 ; 1 Am. Lead. Cas. in Eq. 401 ; Stewart v. Stewart, 7 Johns. Ch. 245.)

*Bakewell & Farish*, for respondents.

That portion of the property which was the proceeds of personal exertions of deceased, belonged to deceased, in her own right, by virtue of " An act for the benefit of married women." (Sess. Acts 1857, p. 666 ; see also Gentry v. McReynolds, 12 Mo. 533.)

The money on deposit was a chose in action, and not in possession. It matters not that this money was the proceeds of rents. The lease was a chattel real, and as such might have been sold by the husband. He might have collected the rents ; but the rent, when collected, became personal property — money ; and when collected and deposited by the wife it became a chose in action, for which suit might have been brought ; but he having failed to reduce it to possession in the lifetime of his wife, it did not survive to him. The money was deposited to the credit of

the wife, and an action at law on the part of the husband would have been necessary to have obtained possession of it. This may have been inferred from the fact that it was not as husband, but as administrator of deceased, that he did and was enabled to get possession of it.

The property was not in possession of the wife at the time of her death. This is not a case of specific personal property in the hands of a bailee, but was money deposited in bank or with a banker. The identical money deposited, of course, was not in the hands of the depositee, and all that remained of it was an indebtedness for so much money deposited. It is not necessary that it should have been evidenced by a note, but it is the same thing, being an account, showing that the depositee owed the depositor a certain amount of money. It was a chose in action, beyond all controversy; and as such, according to the doctrine in Leakey v. Maupin, 10 Mo. 368, not having been reduced to possession by the husband during the life of his wife, he is not entitled to the same, but it goes to her heirs. (Clancy on Rights of Married Women, 111; Nash v. Nash, 2 Mad. Ch. 411; Gates v. Robinson, 6 Mees. & W. 422; Scarpellini v. Atcheson, 7 Ad. & Ell., N. S., 874; Latourette v. Williams, 1 Barb., S. C., 9; Schuyler v. Hoyle, 5 Johns. Ch. 210.)

BAKER, Judge, delivered the opinion of the court.

This case was submitted on an agreed statement of facts, the essential part of which is as follows:

"Johanna Ryan was married to Edward Ryan, January 6, 1850, and they continued to live together as man and wife about two or five years, when he abandoned her, and they never lived together afterward. At the time of their marriage she held certain leasehold property in the city of St. Louis, for which she paid ground rent and taxes, and individually collected and received the rents of houses, which she had put upon said property, up to the time of her death. Said lease expired on the first day of July, 1866. In the year 1852 said Johanna Ryan bought other leasehold property in the city of St. Louis, for which she paid ground rent and taxes on the same, and individually collected and received

the rents for the same till the year 1860, at which time she sold the same for $500, and received the proceeds of said sale. The amounts realized by the deceased from the sale of said lease, and the rents received as aforesaid, she deposited, in her own name, with Peter Richard Kenrick, from time to time, and drew out on her own order portions of said moneys as she required the same. At the time of her death there remained so deposited to her credit the sum of thirteen hundred and five dollars in gold, and three hundred and ninety-five dollars in currency. All of the amounts aforesaid have, since the death of said Johanna Ryan, been collected by said Edward Ryan as her administrator, and are now held by him as such. The applicants herein are the sole sisters of said Johanna Ryan. She died intestate, having no children nor their descendants, no father, mother, nor brothers, nor their descendants."

The leasehold property owned by the wife during coverture is a chattel real, and the husband has a qualfied title to it. He may alienate it at his pleasure during coverture, and by so doing deprive her of her right therein ; and this would be a just exercise of his legal marital rights. But unless the right to dispose of such property has been exercised by the husband during coverture, it will survive to the wife at his death. In this respect chattels real are similar to choses in action. The one survives to the wife unless alienated during coverture, and the other unless reduced to possession during coveture. And this is true whether they are acquired before or after marriage. In England, the husband's right to the chattels real and choses in action of the wife becomes absolute upon her death, if he survives her. The statutes of that country fully justify such a rule. Our statutes are materially different, and this court has held, in construing them, that the husband's right to this kind of property is terminated by the death of the wife. (10 Mo. 368 ; 32 Mo. 532.) These cases contain a correct exposition of the law of this State. In this case the question to be determined is not properly as to the ownership of the leasehold estates of the wife, but rather the ownership of the money arising from rents for their use, and from the sale of them.

It is doubtless true that, at common law, marriage effects an

absolute gift of the personal chattels of the wife, actually in her possession, to the husband, unless they were secured to her by an ante-nuptial agreement through the intervention of trustees, and that the possession of the wife is the possession of the husband. But this is not properly a common-law proceeding. It is in the nature of a proceeding in equity, and the equity powers of the court are invoked. Where there is an ante-nuptial agreement that the wife may carry on a separate trade or business in her own name, a court of equity will enforce it, and secure to her, in her own right, the profits arising from such trade, against her husband and his creditors. If the husband should permit her to carry on business on her sole and separate account, without any such ante-nuptial agreement, all that she earns will be deemed to be her separate property and disposable by her as such, subject to the claims of third persons properly affected by it. So, if a husband deserts his wife, and she carries on a separate trade, her earnings will be enforced in equity against the claims of her husband. (2 Roper on Husband and Wife, 171-6; Story Eq. Jur. § 1387.) The property from which the money in controversy was raised was partly owned by the wife before her marriage, and partly purchased by money not derived from her husband. She was permitted, during the whole period of her coverture — about fifteen years — to deal with it as her own, and was suffered to pay the ground rents and taxes on the same — the husband paying no attention to it or to her. He deserted her in two or five years after their marriage, and never returned to her; and there is nothing in the evidence to justify a conclusion that he afforded her any support. We think it would be unjust, under the circumstances of this case, to permit the husband to retain the money in controversy. It must be treated as the separate property of the wife, accumulated by her own efforts, with the consent of her husband, and by the use of means not derived from him.

The judgment is affirmed. The other judges concur.