JAMES H. B. MCFERRAN ET AL., Respondents, v. PATRICK
S. KINNEY, Defendant; ELIZABETH KINNEY,
Interpleader, Appellant.

### Kansas City Court of Appeals, June 14, 1886.

1. **MARRIED WOMAN'S ACT (1875) LAWS OF MISSOURI, 1875, PAGES 61, 62.
PERSONAL PROPERTY—SEPARATE ESTATE.**—By the act known as
the "Married Woman's Act" (Laws of Missouri, 1875, pp. 61–2), it
is provided that "any personal property, including rights in action,
belonging to any woman at her marriage, or which may have come
to her during coverture by gift, bequest, or *purchase with her sepa-
rate money*, or means, * * * shall, together with the increase
and profits thereof, be and remain her separate property, and under
her sole control, and shall not be liable or taken by process of law
for *the debts of her husband*," etc. To give her a *separate estate,*
without more, the purchase price must have been paid with her
*separate money or means.*

2. —— **PRESUMPTION FROM POSSESSION OF PERSONAL PROPERTY—
AT COMMON LAW AND UNDER ACT OF 1875.**—Although the general

rule of law is that the possession of personal property is *prima facie* evidence of ownership, a like presumption is *not* to be indulged in favor of the possession of a married woman, either before or since the act of 1875. There was no such presumption at common law— the possession of the wife was the possession of the husband, and that it was paid for with the means of the husband. The act of 1875 has not affected or changed this rule of evidence, and does not purport to accomplish any such result. While the statute enlarges the rights and throws additional safeguards around the rights of married women, in respect of certain personal property, the *same proof* as heretofore is just as essential to establish the fact of the purchase having been made with her separate means.

3. ———— CLAIM AND EXERCISE OF OWNERSHIP.—Claim and exercise of ownership by the wife over personal property, with the knowledge and acquiescence of the husband, and during a number of years, are facts sufficient to entitle the wife to have the opinion of a jury, or a chancellor, on the issue of separate property. And she may assert a separate claim to such property coming to her prior to the act of 1875.

4. ———— RENTS AND CROPS UNDER SECTION 3295, REVISED STATUTES— CONSTRUCTION OF SAID SECTION.—Section 3295, Revised Statutes, applies solely to the *legal estate* of a married woman as contradistinguished from her *separate estate*. As the *latter* character of estate was already protected against the debts of the husband, the legislature extended the rule to her *legal estate* in land. It did not recognize her right to *make a contract* at law, which would bind her as a *feme sole*. Her common law disability to contract exists as fully since as before the statute was enacted. The clear purpose of employing (in the section) the words "grant, gift, devise, or inheritance," in the connection in which they occur, was to limit the exemption to such lands as did not come through or by the husband.

APPEAL from Caldwell Circuit Court, HON. E. J. BROADDUS, Special Judge.

*Reversed and remanded.*

The case and facts are stated in the opinion of the court.

CROSBY JOHNSON, for the appellant.

I. Husband may make a reasonable provision for his wife out of his estate. *Wood v. Bradley,* 76 Mo. 23 ; *Moore v. Page,* 111 U. S. 117.

II.   If the wife is allowed to manage and deal with the property as her own, and the husband assents to and recognizes it as hers, it becomes her separate estate. *Welch v. Welch*, 63 Mo. 57 ; *Coughlan v. Ryan*, 43 Mo. 99 ; *McCoy v. Hyatt*, 80 Mo. 135 ; *Holthaus v. Hornbostle*, 60 Mo. 430 ; *State v. Chatham National Bank*, 10 Mo. App. 482.   If he elects to receive property coming to her by inheritance, etc., as trustee for her, it becomes separate estate.   *Machen v. Machen*, 38 Ala. 36 ; *Jaycox v. Caldwell*, 51 N. Y. 395 ; *Bent v. Bent*, 44 Vt. 555 ; *Deck v. Smith*, 12 Neb. 389 ; *Bryant v. Bryant*, 3 Bush (Ky.) 155.

III.   The married woman's act of 1875 applied as well to those already married as to those subsequently married.   Bish. on Married Woman, sects. 35, 34 ; *State v. Ray Co.*, 79 Mo. 420.   That act vested in the wife the legal title of all property which she then possessed, as an equitable separate estate.   2 Bishop on Married Woman, sect. 34 ; *Turner v. Kelly*, 70 Ala. 85.

IV.   Possession by the wife is *prima facie* evidence of her ownership.   2 Bishop on Married Woman, sect. 140 ; *Patterson v. Kicker*, 75 Ala. 406 ; *Whiton v. Snyder*, 88 N. Y. 299.   A note payable to her is *prima facie* her note.   *Bodgett v. Ebbing*, 24 Miss. 245 ; *Bates v. Brookport Bank*, 89 N. Y. 286 ; 2 Bishop on Married Woman, sect. 140.   When a deed recites that the consideration came from her, it will be presumed that such was the case.   *Stoll v. Fulton*, 1 Vroom (N. J.) 430 ; *Morrison v. Koch*, 32 Wis. 254 ; *Kluender v. Lynch*, 4 Keyes, 361.   Crops raised on her lands are presumptively hers. *Scott v. Hudson*, 86 Ind. 286 ; *Stout v. Perry*, 40 Ind. 531 ; *Hamilton v. Booth*, 55 Miss. 60.

V.   None but creditors having claims in 1875 can assail interpleader's title.   *Burke v. Adams*, 80 Mo. 504; *Jones v. Clifton*, 101 U. S. 225 ; *Jenkins v. Clement*, 14 Am. Dec. 678, 706.   As the reply does not charge *fraud*, the court must assume there was none in the transfer of the property.   *Copeland v. Kelsoe*, 57 Ala. 256.

No brief from the respondent.

Philips, P. J.—Respondents, plaintiffs below, sued the defendant, Patrick Kinney, by attachment, under which certain personal property, consisting of cows, horses, and a crop of hay and corn, were seized by the sheriff as the property of said defendant. Elizabeth Kinney, the wife of the defendant, interpleaded, claiming the attached property as her separate property. On a trial before a jury the issues were decided in favor of plaintiffs. The interpleader has appealed.

The issues having been tried on the law side of the court by a jury, the only questions for our consideration are as to the correctness of the declarations of law given and refused by the court.

I.   The first instruction declared, in substance, that Mrs. Kinney was not the owner of the cattle, unless the jury were satisfied that the same were paid for with her separate means, acquired independently of her husband, and that it was not sufficient that she had shown that such means were merely in her hands, but she must show that they were acquired, or came to her, or originated in property acquired since March, 1875.

The evidence concerning the cattle tended to show that the cows, of which the cattle in controversy were the increase, were sold in the fall of 1875, under a chattel mortgage, in favor of one McWilliams. It does not clearly appear who was the mortgageor in this chattel mortgage.

This fact, for some reason, is not disclosed, but the inference is pretty clear that the Kinneys were the mortgageors. Be this as it may, the testimony tends to show that friends of Mrs. Kinney bought in the cattle for her, and gave their notes for the purchase money. There was evidence tending to show that she refunded the money, but it is not clear, by any means, that the money was her separate means. By the act known as

"the married woman's act" (Laws of Missouri, 1875, pp. 61-2), approved March 25, 1875, it is provided that, "any personal property, including rights in action, belonging to any woman at her marriage, or which may have come to her during coverture by gift, bequest, or purchase with her separate money or means  *  * ' * shall, together with the increase and profits thereof, be and reman her separate property and under her sole control, and shall not be liable or taken by any process of law for the debts of her husband," etc.

As the original cattle came to her after the passage of said act, by purchase, to give her a separate estate, without more, the purchase price must have been paid with her separate money or means.  This was a question of fact, and was properly submitted to the jury in the first instruction.  Objection is strongly urged against it by appellant because it, in effect, told the jury that it was not sufficient to establish the existence of such separate means that the evidence should show that the means were in interpleader's hands.  Counsel's contention is, that, as the general rule of law is that the possession of personal property is *prima facie* evidence of ownership, a like presumption should be indulged in favor of the possession of a married woman, especially since the act of 1875.

We are of opinion that the position is not tenable. That no such presumption arose at common law is well settled.  The possession of the wife at law was the possession of the husband.  *Walker v. Walker*, 25 Mo. 376. In *Sloan v. Torrey* (78 Mo. 625), the court says:  "The presumption of law is, it (the property) having been acquired during coverture, that it was paid for with the means of her husband."

If this rule of evidence has been in any degree modified, it must be by some statute.  Wherein has the act of 1875 affected or changed it?  It does not purport to accomplish any such result.

In *Seitz v. Mitchell* (4 Otto 383), it is held, that in a

contest between a wife and her husband's creditors, mere evidence that she purchased the property during coverture is not sufficient to give to her title ; it must satisfactorily appear that the property was paid for with her own separate funds, and in the absence of such evidence, the presumption is a violent one that the husband furnished the means of payment. The court then proceeds to cite with approval many cases holding that this rule is not changed by virtue of the so-called married woman's act. This case is cited with approval by our supreme court in *Weil v. Simmons* (66 Mo. 620), and *Sloan v. Torrey, supra.* In *McCoy v. Hyatt* (80 Mo. 130), the rule is substantially recognized, in passing on the instructions, under the act of 1875. While the statute enlarges the rights, and throws additional safeguards around the rights of married women in respect of certain personal property, the same proof as heretofore is just as essential to establish the fact of the purchase having been made with her separate means.

II. The other instructions may be considered in mass. They, in effect, directed the jury to find against the interpleader as to the horses, and hay, and corn, in controversy.

The evidence showed that the sorrel mare in controversy was given to interpleader by her father as far back as 1868. As to the other horse, interpleader testified that she got it from her brother, who died in 1875 ; that she got it from him "a couple of years before his death." How she got it, whether by gift or purchase, does not appear. The evidence also showed, without contradiction, that these horses were recognized as the property of Mrs. Kinney ; that she always claimed them as hers, and that her husband did not assert any claim to them, etc., but assented to her claim of ownership.

We do not see why the jury should not have been permitted to pass on the question as to the separate property interest of interpleader in the horses. The language of the act of 1875 is broad. It says, the property "which

may have come to her during coverture." While we would not be understood as intimating that the legislature, by an enactment, could divest the marital interest of the husband already acquired in property through the wife, yet, where he consents thereto, and by act and word recognizes the wife's separate ownership, before the rights of any of his creditors have attached, as seems to be the case here, we hold that she may assert a separate claim to such property coming to her prior to the act of 1875. This doctrine is recognized in *McCoy v. Hyatt*, *supra*.

Claim and exercise of ownership by her, with the knowledge and acquiescence of the husband, especially where this fact is public, without fraud upon existing creditors of the husband, and during a number of years, are facts sufficient to entitle the wife to have the opinion of a jury, or a chancellor, on the issue of separate property. 2 Bishop on Married Woman, sects. 34-5; *Holthaus v. Hornbostle*, 60 Mo. 443; *Welch v. Welch*, 63 Mo. 57; *Coughlan v. Ryan*, 43 Mo. 99.

We, therefore, hold that there was sufficient evidence in this case to entitle the interpleader, under proper instructions, to go to the jury as to her separate ownership of the horses.

III. As to the corn and hay, the evidence was that Mrs. Kinney had, in 1882, made a contract with the Hannibal & St. Joseph Railroad Company for the purchase of a tract of land, at the agreed price of eight hundred dollars, two hundred dollars of which was paid, and the balance to be paid. No deed was made to her. The hay and corn were grown on this land, and there was evidence to the effect that hands, whom she called hers, had cultivated the land and produced the crop.

There was nothing to show that the two hundred dollars paid on the land was her separate money, or that the hands were paid out of her separate means. Therefore, as to this payment, and the labor of hands in producing the crops, the rule of law, above adverted to, must

'apply: that the presumption is a violent one that the means of payment were furnished by the husband.

Then the controversy comes to this complexion at last, that the interpleader has a mere executory contract for the purchase of the land on which the crop was grown, and the only purchase money paid thereon, on which any equity could arise in favor of the purchaser, was furnished by the husband. Her interest in the crop is not protected by the act of 1875. *Alexander v. Lydick*, 80 Mo. 341.

But it is suggested that this crop is exempted from seizure for the debt of the husband, by section 3295, Revised Statutes, which declares that: "The rents, issues, and products of the real estate of any married woman, etc., and the interest of her husband in her right in any real estate, which belonged to her before marriage, or which she may have acquired by gift, grant, devise or inheritance during coverture, shall, during coverture, be exempt from attachment or levy of execution for the sole debts of the husband," etc.

I am unable to give my assent to such construction. It has certainly been the common understanding of the profession that this statute applies solely to the legal estate of a married woman as contradistinguished from her separate estate, the offspring of equity. As the latter character of estate was already protected against the debts of the husband, the legislature thought it wise to go one step further and extend the rule to her legal estate in land, to which she held a mere legal title, as under a deed without apt words creating a separate estate. It was not designed to so far divorce her from her husband as to recognize her right to make a contract at law which would bind her as a *feme sole*. Her common law disability to make such a contract exists as fully to-day as it did before the enactment of this statute. *Walker v. Owen*, 79 Mo. 570–1; *Neff v. Redmon*, 76 Mo. 197. "A *feme covert* living with her husband and having no sep-

arate estate, can make no valid contract for the purchase of real estate." *Rose v. Bell,* 38 Barb. 25. "Where a married woman purchases property upon her personal credit, having no separate estate, the title vests in her husband." *Glenn v. Younglove,* 27 Barb. 480 ; *Switzer v. Valantine,* 4 Duer, 96 ; *Lovett v. Robinson,* 7 How. Pr. 105.

While a court of equity, as to such contract of purchase, made by a party *sui juris,* might regard the vendor as the holder of the legal title in trust for the benefit of the purchaser, and the vendee as the equitable owner, subject to performance of the contract, yet as to a *feme covert* the statute has not gone one step in removing her common law disabilities as to such contracts, or in shielding such acquisitions from liability for the debts of the husband. It is a mere equitable claim which may ripen into a legal estate.

The term "real estate" must mean a vested estate by deed, devise, inheritance, and the like. The land in question, it is conceded, came by purchase during coverture. If it is protected against the husband's creditors, it must have come by "grant."

The term "grant" must, under the recognized rule of interpretation, be taken to have been employed in its ordinary acceptation. Being employed respecting incorporeal hereditaments it denotes a transfer by deed of that which could not be transferred by livery. 3 Wash. Real Prop. 181. As held by the New York courts, it embraces conveyances of the inheritance of freehold and deeds of bargain and sale. 3 Wash. Real Prop. 353. As employed in our conveyance act it applies to deeds conveying the title, and the statute affixes to its use certain implied warranties of title. Rev. Stat., sect. 675. The legislature manifestly, in the section under review, was not treating of mere equitable interests based on contracts of purchase. As it had not removed the common law disability of a *feme covert* to enter into such a contract as the one in question, it would be irrational to hold that

it contemplated by this enactment the protection of her interests under a contract which she was deemed incapable of making.

To hold that the quality of the title to real estate, from which the rents, etc., may flow, may be of less dignity than that which the same section forbids the sale of the husband's interest in, would be to admit that his interest in this land, held under a contract of purchase, might be sold for the husband's debt, which interest at least would be his possessory right, *jure uxoris*, while the same liability, under a grant to her, would not attach. No possible reason is assignable, in my opinion, for such distinction, and none such could have been within the legislative mind. It occurs to me that it would have been an idle enactment to secure to her the rent, etc., while allowing her husband to transfer the possession out of which such rent could come.

The clear purpose of employing the words "grant, gift, devise, or inheritance," in the connection in which they occur, was to limit the exemption to such lands as did not come through or by the husband. *Rider v. Hulse*, 33 Barb. 264 ; 24 N. Y. 372, and cases *supra*, from New York.

It follows that the instruction touching the hay and corn, in my opinion, was proper.

It is not deemed important to follow counsel further in their discussion. The trial court, on a further hearing, can have no reasonable difficulty in properly declaring the law.

The judgment of the circuit court, for the reasons herein given, is reversed and the cause remanded. All concur.