Furth v. March.

## JACOB FURTH et al., Respondents, v. CHAS. H. MARCH et al., Appellants.

**St. Louis Court of Appeals, April 14, 1903.**

1. **Husband and Wife: WIFE'S SEPARATE EARNINGS: R. S. 1899, SEC. 4340, CONSTRUED.** By section 4340, Revised Statutes 1899, a married woman's wages is her separate property, and where she purchases a home on her own account, and keeps boarders therein as a means of earning money for herself and family, such earnings are her property and not subject to her husband's debts.

2. ———: **HUSBAND'S SALARY EXEMPT: SEC. 3162, R. S. 1899, CONSTRUED: CREDITORS.** Contribution by a husband of his salary, exempt under Revised Statutes 1899, section 3162, to payment of an incumbrance on his wife's land, is not a fraud on his creditors, so as to make the land subject to their claims.

3. ———: ———: **HUSBAND'S DEBTS: ENCUMBRANCE PAID OFF: BURDEN ON CREDITORS.** Where creditors seek to subject the land of the debtor's wife to his debts on the ground that his money paid off an incumbrance thereon, she need not plead that his money was exempt, to avail herself of the fact; the burden being on the creditors to show that the money of his, subject to payment of their claims, was used in paying the incumbrance.

4. ——: ——: MONEY OF HUSBAND EXEMPT, USE OF.
Money of a husband exempt, may be used to pay off an incumbrance
on his wife's property, without rendering the wife's property so re-
leased, liable for his debts.

Appeal from St. Louis County Circuit Court.—*Hon.
Jno. W. McElhinney*, Judge.

REVERSED.

### STATEMENT.

On September 9, 1892, plaintiffs recovered a judg-
ment in a justice's court, in the city of St. Louis, against
defendant Charles March for $296.80, a transcript of
which was filed in the office of the clerk of the circuit
court of the city of St. Louis. On the same date plain-
tiffs recovered another judgment in a justice's court,
in the city of St. Louis, against defendant Charles
March for $279.22, a transcript of which was also filed
in the office of the clerk of the circuit court of the city
of St. Louis. Executions were issued on both these
judgments on which a return *nulla bona* was made.

Defendant Ellen March is the wife of Charles
March.

The petition alleges that Ellen March, on July 1,
1892, was possessed of and owned in fee simple a tract
of land (describing it) situated in the county of St.
Louis, of the value of $4,500; that said land was incum-
bered by a deed of trust for $3,969, executed by defend-
ants to the Centennial Building and Loan Association.
The charging part of the petition is as follows:

"Plaintiffs state that, between the said first day of
July, 1892, and the sixth day of December, 1898, de-
fendant Charles H. March, with intent to hinder, delay
and defraud his creditors and among them, these plain-
tiffs, voluntarily and without consideration whatsoever
moving to him and, at the instance and with the knowl-
edge of said Ellen March, paid off and satisfied, out of
his own means the debt of the said Ellen G. March, se-

cured by the said deed of trust on the said land the property of said Ellen G. March; and said deed of trust was, on said sixth day of December, 1898, released of record by said Centennial Building and Loan Association; and that, at all the times hereinbefore mentioned, and until the payment of said debt, said deed of trust was a lien and incumbrance on said land.

"Plaintiffs say that no consideration passed from said Ellen G. March to said Charles H. March for said satisfaction of said debt secured by said deed of trust, but that said payment was made by said Charles H. March with intent to hinder, delay and defraud his creditors as above stated, of which intent, said defendant Ellen G. March was fully cognizant at the time said payment was made by said Charles H. March; and that said Charles H. March was, at all times, herein mentioned, wholly insolvent, of which fact defendant Ellen G. March was then and there well aware.

"Plaintiffs further state that said Charles H. March has no other property out of which said judgment and executions can be satisfied in whole or in part and that, unless the property so fraudulently conveyed to the defendant Ellen G. March can be reached and applied to the payment of said judgments, the same must remain wholly unpaid."

The relief prayed for is that the debt due plaintiffs be declared a lien upon the real estate, etc.

The answer was a general denial.

The evidence shows that on November 18, 1890, Ellen March purchased the land described in the petition for a consideration of $4,250; that she paid with her own individual money $290 cash on the purchase, and to raise the balance of the purchase price subscribed for sixteen and one-half shares of the Centennial Building and Loan Association and gave her bond for the sum of $3,960, and to secure the same executed to the association a deed of trust on the land. Her husband joined her in the execution of this deed. The loan was to be

extinguished by monthly payments.    These were made monthly, with some irregularity, until April, 1898, when the debt was extinguished.    The deed of trust, however, was not satisfied of record until December 6, 1898.

At the time Ellen March purchased the real estate, Charles March was a stockholder and superintendent of a corporation doing a retail grocery business.  As superintendent he was receiving a salary of $75 per month. The corporation in a short time failed in business, nothing was realized on its stock and March was out of employment for a few months.    About March 1, 1893, he was employed by the Adam Roth Grocery Company, as city salesman, at a salary of $75 per month.    After August 1, 1894, he received a salary of $85 per month until January, 1895, and from January, 1895, until January, 1896, he received a salary of $100 per month, and from January, 1896, until January, 1897, a salary of $125 per month, and from January, 1897, to January, 1898, he received a salary of $150 per month, and at the time of the trial was receiving a salary of $215 per month.

The evidence is that he owned no property and had no other source of income than his salary.    His salary was paid to him each month.    His family, in 1890, consisted of himself, his wife, one daughter and two sons. After the purchase of the real estate they all resided on the premises.    One of the sons died a short time after they moved on the premises.    After March, 1893, Charles March had a spell of sickness.    The expense of this sickness and the expense of the last illness and burial of his son, the evidence tends to prove, cost something over $2,000.

Charles March testified that his individual expenses as salesman for the Adam Roth Grocery Company were about $30 per month, which he paid out of his own pocket.    He testified that when he was in business, his wife had advanced him money at different times, aggregating from twelve to fifteen hundred dollars, and that he had never repaid her.

He further testified that he never paid a dollar of his own money on the deed of trust to the Centennial Building and Loan Association and had never let his wife have money for that purpose; that he aimed to pay the expenses of his household; that some months his salary would be sufficient to meet the bills, but in other months he would have to draw on his salary in advance for the purpose of supplying necessaries for his family; that sometimes he would pay the bills, but generally he would give his wife the money for that purpose; that he gave his wife all the money he earned, over and above his individual expenses, and never asked any questions about what she did with it.

The son of defendant is also a salesman for the Adam Roth Grocery Company. He has for years paid his mother $30 per month for board. From the time she purchased the property, he let his mother have money to aid her in making payments on the deed of trust, and has purchased and now owns a second deed of trust on the property for $1,200. The son who died, prior to his death, was earning from forty to forty-five dollars per month and the evidence is that he gave his mother every dollar of his earnings over and above his personal expense, which the evidence shows to have been very small.

The evidence further is that Ellen March kept boarders for about twenty-seven years and that the monthly installments on the deed of trust were paid from profits in this business and from money given to her by her sons; that on several occasions she was unable to make payments when they became due and borrowed money from her boarders to meet the installments; that at one time she borrowed from one boarder $450 for this purpose and at another time borrowed $100 for the same purpose.

Ellen March testified that when her husband was getting seventy-five, eighty-five and one hundred dollars per month, his salary "did not begin to run the

house," that her grocery bill for one month was $75; that her husband rarely ever gave her enough to cover the household expenses, and that he never gave her money or paid debts, such as household expenses, in an amount more than sufficient to maintain the family, independent of the boarders; that when he was in business for himself she advanced him at one time $1,200 and at another time $500, that she had saved from keeping boarders, which he never repaid, and that he had never directly or indirectly contributed toward the payment of the deed of trust; that she conducted the business of making the purchase and securing the loan herself, and that her husband did not have five cents in it; that her daughter was sent to school and took music lessons for three years at a cost of $24 per quarter.

It is in evidence that the money to pay the installments on the loan was sometimes handed in by Mrs. March, sometimes by her son and at other times by Mr. March, but they all testified that the money was furnished by Mrs. March.

On this evidence the court entered a decree that unless, within thirty days prior to its entry, $967.26 be paid plaintiffs, that the same should be levied on the land of Mrs. March under a special execution. From this decree defendant appealed.

*R. L. & John Johnston* and *R. M. Nichols* for appellants.

(1) The only property shown to have been owned by Charles March was his wages, which were exempt and could not have been the subject of fraudulent conveyance. Sternberg v. Levy, 159 Mo. 627; Kulage v. Schueler, 7 Mo. App. 250; Sottesburg v. Kirtland, 35 Mo. App. 148; State v. Bragg, 63 Mo. App. 27; Railroad v. Smersh, 22 Neb. 751; Boyd & Co. v. Pottle, 65 Mo. App. 376; Provencher v. Brooks, 64 N. H. 473. (2) The exemption of the last thirty days is affixed to

the property, and is not a mere personal exemption to the wage earner, and for that reason there could be no fraudulent conveyance. State v. Brady, 57 Mo. 562; Mangold v. Dooley, 89 Mo. 111; Lewis v. Barnett, 96 Mo. 133. (3) The wife was herself a money-maker, in keeping boarders with her husband's assent, and to allow such inference to prevail would do violence to and override the rights granted to the wife by the statute. R. S. 1899, sec. 4340; Woodward v. Woodward, 148 Mo. 241; Bartlett v. Umfried, 94 Mo. 530.

*Henry H. Furth* for respondents.

(1) Exempt property, in this State, is of two, kinds, viz.: (a) Property specifically exempted under section 3159, Revised Statutes 1899. '(b) Property selected and claimed by the debtor under section 3162, Revised Statutes 1899, at the time a levy is threatened or made to avoid or defeat such levy. The property embraced in the first subdivision is exempt at all times and under all circumstances; that embraced in the second subdivision, only after the same is selected under the circumstances mentioned. Garrett v. Wagner, 125 Mo. 450; Stotesbury v. Kirtland, 35 Mo. App. 148; Alt v. Bank, 9 Mo. App. 91; Guntley v. Stead, 77 Mo. App. 155, 164; Linck v. Troll, 84 Mo. App. 49, 57. (2) Services performed by a married woman in and about her husband's household are not rendered on her separate account, but for the husband; and the earnings resulting therefrom are his property and subject to the claims of his creditors. Bloodgood v. Meissner, 84 Wis. 452; Flynn v. Gardner, 3 Bradw. (Ill. App.) 253; Reynolds v. Robinson, 64 N. Y. 589; Stamp v. Franklin, 12 N. Y. Sup. 391; Hamill v. Henry, 69 Iowa 752; Coleman v. Burr, 93 N. Y. 17; Hoage & Steere v. Martin, 80 Iowa 715; Barnes v. Moore Estate, 86 Mich. 586; Carpenter v. Carpenter, 25 N. J. Eq. 194; Dieffendorf v. Hopkins, 95 Cala. 343; Bettes v. Magoon, 85 Mo. 580, 586.

BLAND, P. J.—It may be conceded that, independent of the statute (section 4340, Revised Statutes 1899) giving to a married woman the wages of her separate labor as her separate means, her earnings resulting from her labor in and about her husband's household are his property and subject to the claims of his creditors; and it may also be conceded that, in a legal sense, Charles March was the head of his family, but when, as in this case, the wife purchases a home with her own means and on her own account and, with the consent of her husband, keeps boarders therein as a means of earning money for herself and not for her husband, her earnings are her property and are not subject to her husband's debts.   Coughlin v. Ryan, 43 Mo. 99; Kidwell v. Kirkpatrick, 70 Mo. 214; Bartlett v. Umfried, 94 Mo. 530; Gruner v. Scholz, 154 Mo. 1. c. 425.   There is no law in this State to compel a husband to labor to pay his debts.  Seay v. Hesse, 123 Mo. 450; State ex rel. v. Jones, 83 Mo. App. 151.   *A fortiori* there is no law in this State to compel a wife to labor for the benefit of her husband's creditors.

In Gruner v. Scholz, supra, at page 450, it is said: "The courts will closely scrutinize all transactions between husband and wife to discover any fraudulent scheme to defraud his creditors, but they will not go so far as to prevent the wife from honestly securing a home for herself and her family when he has failed in business."   And it was further held that, "The presumption that property obtained by the wife during coverture was purchased with his money, may be rebutted, and if the transaction consists as well with honesty as with fraud, it will be presumed honest."

The evidence clearly shows that Mrs. March and her children were making an honest and heroic effort to provide the family with a home; that her sons contributed their earnings to her for this purpose and that the home was mostly, if not entirely, paid for by the joint earnings of herself and children; and we are una-

ble to see upon what principles of justice, or rules of
equity, the creditors of her husband have any claim
upon the proceeds of their earnings for the payment of
March's debts.   But it is contended that a portion of his
salary went to extinguish the mortgage.  We have
searched the record in vain to find where a dollar of his
salary for any month at any time was so used.   It is
true, it is possible to draw an inference that at some-
time, no one can tell when, a part of his salary for some
month, no one can tell how much or for what month,
might have gone to help make up some installment that
was paid on the deed of trust.   The burden was on the
plaintiffs to prove these payments were made by March
and the amount of the payments.   They utterly failed
to make any such proof.   But even if we were led to
infer that a considerable portion of the payments were
made from March's salary, the evidence is that he was
paid a salary monthly and that he is the head of a fam-
ily; that he was possessed of no property and had no
income other than his salary, which for no month ex-
ceeded the sum of $300.   This amount was exempt, un-
der section 3162, Revised Statutes 1899, and his credit-
ors would not have been defrauded if he had turned
over every dollar of it to his wife to be used by her at
her pleasure.

In Sternberg v. Levy, 159 Mo. l. c. 626, the Supreme
Court, through MARSHALL, J., said: "But if a man is
entitled to his salary and certain exemptions as the head
of a family which his creditors can not touch, and if he
chooses to spend a part of his salary in premiums for
life insurance for the benefit of his family after he is
gone, his creditors are not thereby defrauded, for he
has withdrawn no part of his property which his cred-
itors could touch."

But it is contended by the plaintiffs that to entitle
the defendants to claim the exemption, they should
have made the claim in their answer.   In Sternberg v.

Levy, supra, Sternberg, the interpleader, pleaded specially that the insured had made certain earnings over and above what was necessary to support his family and had invested the surplus in life insurance for their benefit; the interplea showed that his salary did not exceed $300 per month. The Supreme Court struck out this part of the interplea on the ground that Levy's monthly salary was exempt.

We know of no principle of equity pleading that excuses the plaintiff from pleading and proving all the facts essential to the relief sought. It was essential that plaintiffs prove as they had, in substance, alleged that March's money or some portion of it that was subject to the payment of their debt, had been applied to the payment of the deed of trust. Proof that money exempt from execution was so applied, did not meet this allegation. Judson v. Walker, 155 Mo. 166; Sternberg v. Levy, supra.

There is no evidence in this record proving or tending to prove the fraud alleged, or to show that plaintiffs are entitled to any recourse whatever on the property of Mrs. March to pay her husbands debts.

The judgment is reversed. *Reyburn* and *Goode, JJ.,* concur.