McCoy et al., *Appellants*, v. Hyatt.

1. **Married Woman's Personal Property.** Irrespective of statute, courts of law as well as equity now recognize the doctrine that personalty may be the absolute property of the wife under certain conditions.

2. ——: EVIDENCE. The separate title of the wife to personalty may be established by words, acts and conduct as well as by writing; and where the proof of her ownership is clear, the fact that her husband is indebted does not affect her right.

3. ——: WIFE'S POSSESSION AND CONTROL. Long and uninterrupted control over personal property by the wife with the husband's acquiescence is presumptive evidence of her ownership against the creditors of her husband, where such property has not been mingled with his nor used by him so as to create a credit based upon his apparent ownership.

4. ——: THE ACT OF 1875. The married woman's act of 1875, (now ₰ 3296, R. S. 1879,) in nowise interfered with the right of married women to acquire, or the manner in which they might acquire a separate estate in personalty by gift or purchase, as it previously existed. The act was designed to enlarge the operation of the right, to simplify the proof of the existence of the estate, and to afford protection especially against the effects of the husband's reducing the property to possession, by providing that no such reduction should be effectual, unless evidenced by writing signed by her.

5. ——: PURCHASES BY MARRIED WOMAN. The purchases of a married woman protected by that act are those made with her separate money or means, and those only.

6. ——: GIFTS TO HER: MIXED PURCHASE AND GIFT: CONVERSION. The act protects gifts as well as purchases; and where a married woman, by her pleading claimed property by virtue both of gift and purchase, and there was evidence tending to show that she acquired it in consideration partly of love and affection and partly of money paid; *Held*, that it was error so to instruct the jury as to permit a verdict for her only in case they found the money paid was her separate means. She might fail to show this, and consequently so far as the acquisition was a purchase it might be without the pale of the act, and yet so far as it was a gift, be protected; and the possible difficulty of ascertaining the exact extent of her interest would not warrant the court in withholding the question from the jury. *Held*, also, that where a married woman had such an undivided interest, if a person claiming through her husband appropriated the property to his exclusive use and denied her right altogether, that

was in law a conversion, and entitled her to maintain an action against him, as in trover, for damages, to recover her interest.

*Appeal from Johnson Circuit Court.*—HON. N. M. GIVAN, Judge.

REVERSED.

*L. T. White* and *John J. Cockrell* for appellants.

*Sparks & Campbell* for respondents.

PHILIPS, C.—The petition in this case alleges in substance that on the 23rd day of March, 1878, the plaintiffs were and are yet husband and wife; that on the day aforesaid the said Virginia was the owner in her own right by gift and purchase of a certain mowing machine described, and that, on the 25th day of March, 1878, the defendant Ramsey, with the assistance of the other defendants, with force and arms, willfully, wrongfully and unlawfully seized upon and converted the same to their own use, to her damage in the sum of $100, for which judgment is prayed.

The answer admitted the coverture and then pleaded that at the time of the acts complained of, the defendant Ramsey was constable in said county; that defendant Hyatt having recovered judgment in a justice's court against the plaintiff, J. L. McCoy, husband of said Virginia, for $26.20, had execution issued thereon, which came to the hands of said Ramsey as such constable, who levied the same on the machine in question; that the said Virginia having made claim in writing to said constable of said property verified by affidavit, a jury was called to try the right of property, who found the issue thus made for the said Virginia; thereupon Hyatt, with the other defendants as sureties, gave to the constable an indemnifying bond, and he then sold the machine, Hyatt becoming the purchaser at the sum of $35, and taking the machine away. The answer then alleged property in the husband, and charged that the pre-

tended title of the wife was a fraud upon the creditors of said husband.

The reply tendered the general issue as to the allegations of ownership and fraud made in the answer. The cause was tried before the court sitting as a jury. Verdict and judgment for defendants. The case was dismissed by plaintiffs as to the constable, Ramsey, before trial.

Plaintiffs' evidence was to the effect that L. M. McCoy, the father of J. L. McCoy and father-in-law of Virginia McCoy, bought the machine sometime in 1873 or 1874; that in 1875, finding he did not need it, he offered to let his daughter-in-law have it, in consideration of love and affection and the sum of $20, which sum she agreed to pay and did pay. The family all seem to have regarded the machine as that of Virginia after this transaction. In 1877, L. M. McCoy executed and delivered to Virginia the following bill of sale: "I, Lewis M. McCoy, of the county of Johnson, State of Missouri, have this day, for and in consideration of $20, to me in hand paid by Virginia McCoy, the receipt whereof is hereby acknowledged, as well as for the love and affection I have toward her as my daughter-in-law, sold and confirmed unto her one Buckeye mower of the junior pattern, and warrant the title thereof to be good. Witness my hand this 15th day of September, 1875." The debt in question was created subsequent to these transactions. The evidence tended to show that at the time of the sale the machine was worth $50

Defendant offered testimony showing that at the time of the levy, the constable went to J. L. McCoy's house and asked for a list of their property, and plaintiff, Virginia McCoy, and L. M. McCoy did make out a list which set forth certain property as the property of J. L. and other property as property of Virginia McCoy, and the machine in controversy was not at the house and was not on either list. One witness swore that in 1877, and again in 1878, J. L. McCoy offered to trade the machine in controversy for a wagon, and the last time mentioned the fact that it

was his wife's. Another testified that J. L. McCoy offered to trade it for a wagon in 1877. Another had worked for L. M. McCoy, father of J. L. McCoy, in 1873, 1874, 1875, and said that J. L. McCoy spoke of this machine as his, and, on cross-examination, admitted that J. L., while living with his father, claimed nearly everything he used. J. L. Roberts testified to selling the machine to J. L. McCoy in 1873, but on the credit of L. M. McCoy. The notes were shown to have the signature of J. L. McCoy first, and L. M. McCoy second on them. And the bank cashier admitted that L. M. McCoy was there when one of the notes matured and was paid. Another testified that a cultivator and some other articles were levied upon at the same time the mower was, and no claim was made on them.

The plaintiffs asked the following instructions, all of which the court refused :

1. If the court, sitting as a jury, believes from the evidence that the plaintiff, Virginia McCoy, acquired the property in controversy by gift or purchase, then the possession of the husband is the possession of the wife, unless the said property was reduced to the possession of the husband by and with the consent of the said Virginia McCoy in writing.

2. If the court, sitting as a jury, believes from the evidence that Virginia McCoy was put in possession of the mowing machine in controversy prior to the levy upon it by Constable Ramsey, and had never parted with her right thereto at the time of said levy, then the law presumes that she was the rightful owner thereof, and unless the defendants show, by a preponderance of evidence, to the satisfaction of the court, that she was not then the owner of said machine, it must find for plaintiffs and assess their damages at the value of said machine at the time of the levy thereon.

3. If the court, sitting as a jury, believes from the evidence that said Virginia McCoy acquired the property in controversy by gift or purchase, prior to the time of the levy thereon, then the finding will be for plaintiffs, unless

defendants have proven to the court that she sold said property to her said husband, or that he reduced it to his possession with her consent in writing.

On behalf of the defendants the court declared the law to be as follows :

1.   It devolves upon the plaintiffs to show, by a preponderance of evidence, that the mowing machine in controversy was the property of Virginia McCoy at the time the same was levied upon by Constable Ramsey.

2    Unless the court finds from the evidence that Virginia McCoy purchased said machine with her separate funds from Lewis McCoy, prior to the time the same was levied upon by the constable, the finding will be for defendants.

3.   Although the court should find from the evidence that Virginia McCoy did purchase the said machine on the 15th day of September, 1875, and paid $20 for the same sometime afterward, still, unless it further appears from the evidence that said purchase was made by the said Virginia with her own separate money and means, then the finding will be for defendants.

I.   A summary review of the general question of a married woman's property rights may make clearer the conclusion I have reached in this case.

Under the common law the acquisitions of the wife enured to the benefit of the husband, and became liable for his debts.   As her legal existence by fiction of law was swallowed up in that of her husband, her possession was his.   In the progress of law and justice the courts of equity interfered, under certain circumstances, as against the husband and his privies, for the protection of the wife, securing to her the enjoyment of property as a *femme sole.*   It was long held that a trustee for her was essential as the depositary of the legal title. Courts of equity, however, soon held that rather than injustice should be done they would constitute the husband, where he held the possession, a trustee for the wife.   *Holt-*

1. MARRIED WOMAN'S PERSONAL PROPERTY.

*haus v. Hornbostle,* 60 Mo. 442. And like every other principle of jurisprudence, though not changeable, yet possessing so much flexibility as to adapt itself to the growing necessities and varying circumstances of civilization and of social and domestic life it has so extended that courts of law as well as of equity recognize and adjudicate upon personalty as the absolute property of the wife under certain conditions.

Both as to the real and personal property no particular or set phraseology is essential, in the instrument vesting
2. ——— : evidence. the property, to create a separate estate in a married woman. It is only necessary to this end to employ such terms of expression as indicate clearly and unequivocally the intent to vest in her the title and estate independent of the husband. And in respect to personal property the title to which may pass without deed or other instrument of writing, as by word and delivery, the separate title thereto of a *femme covert* can be established by acts, conduct and words, as any other fact *in pais. Holthaus v. Hornbostle, supra,* 443. And where the proof is clear and persuasive that the property is so placed in her, the fact of the husband's indebtedness cannot affect her proprietorship and right. As is stated by the learned judge in the case last cited, the object often in giving or transferring property to the wife of an insolvent husband, is to save her from his improvidence and worthlessness.

The existence of this separate property interest in her may be drawn and established from the facts of her long
3. ———; wife's pos- and uninterrupted control over it with the
session and control. acquiescence of her husband in her dominion over and management of it. *Welch v. Welch,* 63 Mo. 57; *Coughlin v. Ryan,* 43 Mo. 99. In this last case our Supreme Court cite with approval the doctrine held on this question by the supreme court of Vermont. In *Richardson v. Merrill,* 32 Vt. 27, and in *Caldwell v. Renfrew,* 33 Vt. 213, it is held that courts of law, as well as of equity, will protect property coming to the wife by gift or purchase, and though no apt words in the donation or purchase may be used to

create, in the first instance, a separate estate, yet where the husband has, by his acquiescence, conceded her right of dominion over it, treating it as her property, it may nevertheless be regarded and protected as her separate estate; and this too against creditors of the husband, where the property has not been so mingled with the husband's, or so used by him, as to create a credit in his favor on the faith of his assumed ownership. Redfield, C. J., in *Richardson v. Merrill, supra,* page 35, says: "All who are familiar with the subject are aware that creditors and purchasers are always bound to respect counter-equities in third parties which come to their knowledge before they have actually made advances, or otherwise changed their position, in faith of the absolute property being in the person ostensibly holding it." So in *Welch v. Welch,* 63 Mo. 59, it was expressly conceded that the wife " never had any technical separate estate conveyed to her by any separate estate trust deed, but claims the above by virtue of their being her own earnings which the husband allowed her to keep." The court say, touching this, that if " the gift from a husband to his wife will be upheld, it is not perceived why the same result will not follow when the gift emanates from a third person when the husband assents to it, and treats the property as belonging exclusively to the wife."

The act known as the Married Woman's Act passed March 25th, 1875, (Laws 1875, p. 61 ; § 3296, R. S. 1879,) in no wise interfered with her right to acquire, or the manner of her acquiring, a separate estate in personalty by gift or purchase, as it existed prior to its adoption. The act was designed to enlarge its operation, to simplify the proof of its existence, and to afford protection, especially against the effect of the husband's reducing the property to possesssion, by providing that no such reduction should be effectual which was not evidenced by writing signed by her. If, as a matter of fact, Mrs. McCoy received the machine by gift or purchase, or both, from her father-in-law, and she, or some one for her,

held the possession thereof, claiming it as hers, exclusively, for a period of time running from 1875 to 1879, these would be facts from which a jury or court might conclude that she owned the property, and, if free from fraud on her part, she can hold it against her husband's creditors.

The learned judge tried this case, however, on the theory that unless the plaintiffs' claim came clearly within the operative words of a part of the act of 1875, they could not recover. The instructions, notwithstanding the case was tried before the court without a jury, become important as showing the theory upon which the court determined the case.

II.　Under the act of 1875 the first instruction asked by plaintiffs was properly refused, because it authorized a recovery "if Virginia McCoy acquired the property in controversy by gift or purchase," without adding the words of the statute "with her separate money and means." So the second instruction was bad, if predicated of the act of 1875, and bad if resting on the general law, for in either case it did not sufficiently present the fact of a separate fund or estate. For a like reason the third instruction was properly refused.

The instruction given on behalf of the defendants, number two, declares that: "Unless the court finds from the evidence that Virginia McCoy purchased said machine with her separate funds from Lewis McCoy prior to the time the same was levied upon by the constable, the finding will be for the defendants." Like the rest given by the court this instruction is faulty because it limits the right of plaintiffs to recover to the sole issue that Mrs. McCoy must have "purchased said machine with her separate funds from Lewis McCoy."

The petition alleges that she was the owner in "her own right by gift and purchase." If she acquired the property by gift, that fact as effectually placed the title in her, as if she had purchased the property with her separate

means.    The evidence of Lewis McCoy (and so the bill of sale recites) was that he transferred the machine to the plaintiff, Mrs. McCoy, for the money consideration of $20, and also on account of the love and affection he bore her. This being evidence in the case, she was entitled to have the law declared covering the whole case made by the pleadings and the proofs.    The evidence on her behalf tended to show that the machine when seized was worth $50, and the fact disclosed by the record is, that it sold under forced sale for $35.    If this was true, the actual value of the property when transferred to Mrs. McCoy was largely in excess of the money consideration expressed in the bill of sale. And if that excess was represented by the gratuitous gift, she clearly had an interest in the property to be asserted and protected.    The court held, as a matter of law, however, that unless the whole title of Mrs. McCoy came by purchase, she could not recover anything.    This, we are of opinion, was error.

If the real fact was that the $20 belonged to her husband, and was not a gift to her under such circumstances as would exempt it from liability for his debts, and she was the owner of the interest represented by the amount of the gift, the interest of the husband, whatever it was, was perhaps liable to seizure under execution for the judgment obtained by Wyatt against the husband.

This court has held in *Wiles v. Maddox*, 26 Mo. 77, that an execution under a judgment against one of two partners may be levied upon the interest of the judgment defendant in the partnership effects, or upon his interest in any portion of such effects, although there be at the time no means of knowing what the precise interest of such partner is in the common property, nor could be known until after an adjustment.    And in levying such execution, the officer may seize and take into his possession the entire partnership effects.    So in this case the officer would, in the event of the husband having an undivided interest in the machine, be justified in seizing the whole machine and

selling the interest of the husband therein; and the purchaser would acquire thereunder whatever interest the husband had, and no more. He would then be admitted as a tenant in common with Mrs. McCoy, but with no right to appropriate the entire property to his own use to her exclusion. And when, as in this case, he did appropriate the machine as his exclusive property and deny her right altogether to its enjoyment or any part thereof, that was in law a technical conversion of the whole property, and entitled her to maintain her action against him for damages, as in trover, to recover her interest. *Watson v. King*, 4 Camp. 272; *Wilson v. Reed*, 3 John. 175. The suit against the constable who made the seizure being dismissed, the action remained against the wrong-doer, Wyatt.

This question was passed on by the supreme court of Pennsylvania in 1879, under a statute quite similar to our Married Woman's Act. *Holcomb v. People's Saving Bank*, 92 Pa. St. 338. The lower court there said it could not charge the jury as requested, " as the proof was not sufficient to entitle the plaintiff to claim the whole of the property as against the creditors of the husband." But the appellate court, after declaring that the question of the wife's ownership of any part of the property should have been submitted to the jury, said: " The mere fact that there may be difficulty in determining which articles are the product of her property, did not justify the court in taking the question from the jury." So here, although there be but one article, there can be no such difficulty in determining the interest of the wife therein as would warrant the court in withholding the question from the jury.

The case, in our opinion, should be re-tried on the whole merits in accordance with the foregoing principles of law. To that end the judgment of the circuit court is reversed and the cause remanded. All concur.

NORTON, J., absent.