29  625
46   35

NANNIE D. ARNOLD, Respondent, v. ALICE T. BROCKENBROUGH, Appellant.

### Kansas City Court of Appeals, March 19, 1888.

1. MARRIED WOMEN—CHARGE UPON SEPARATE PROPERTY—INCIDENT OF JUS DISPONENDI.—The idea runs through the whole doctrine of a married woman creating a charge by her contract, which a court of equity will enforce against her separate estate, that it is the incident of the *jus disponendi* by her as to such property, particularly so as to personalty. Where the interest is only a life estate, and only the usufruct enures to her benefit, she can create no equitable charge upon the property.

VOL. XXIX—40

2. —— —— POWER OF APPOINTMENT.—The courts universally recognize that the power of appointment (which is but the synonym of creating a charge) may be restrained by the language of the instrument creating the estate. And acts in contravention of the scheme and purpose of the donor are invalid; so that a *feme covert*, not possessed of a separate estate when she gave a note (as in this case), there could be no charge upon it. A married woman can only incumber or charge property which she owns at the time she contracts debts; her promises to encumber future acquisitions are void.

3. —— GIFT FOR A PARTICULAR PURPOSE—RULE CONCERNING. Like a charity, a gift for a particular purpose and specified use, cannot be altered by the trustee or beneficiary. It must be accepted and applied upon the precise terms on which it was given; and no concurrence among the donees can operate to transfer or apply it to other purpose, or in any other mode, than that prescribed by the donor.

APPEAL from Boone Circuit Court, HON. G. II. BURCKHARTT, Judge.

*Reversed (except as to parties not appealing).*

Statement of case by the court.

This is a proceeding to subject certain personal property, as the separate property of the defendant, Alice, to the payment of two promissory notes executed by her, with her husband, W. N. Brockenbrough, and H. W. Yancey as sureties to the plaintiff. The action grows out of the following state of facts: Mrs. Eleonora S. Thomas, the mother of Alice, by her last will and testament, devised and bequeathed her property, consisting of lands and money, to her two children, the said Alice, and her son, John S. Thomas. The said W. N. Brockenbrough, intermarried with said Alice, was a dissipated, improvident man, and it was the purpose of the parties to secure to said Alice the enjoyment of the estate to her own use and benefit. Accordingly, Mrs. Thomas designated the defendant, Robert L. Todd, the executor of her will and the trustee for said Alice. The will authorizes the executor to sell the property, at his discretion; and out of the proceeds, after the

payment of debts, to pay to her son, John S. Thomas, first, the sum of five hundred dollars, after which the residue to go, one-half to said Alice and the other half to said John S., the estate of said Alice to go to said Todd in trust for her. The will directed the said Todd, as trustee, "as may in his judgment best promote the interests and comfort of Alice and her family, either to invest the trust fund in a suitable home, taking the title to himself as trustee, and allowing Alice and her family to use, occupy, and enjoy the same, or the rents thereof, during her life; or to loan it at interest, or to invest it in interest-bearing securities, and to pay Alice annually, the income and profits during her life. In whatever mode it is used, at the death of Alice, said trustee is directed to convey the same to the children of said Alice, if she shall leave children living at her death; but if said Alice shall leave no children surviving her, then said trustee shall convey the same to my son, John S. Thomas, in fee-simple."

The testatrix died in 1883, and Todd qualified as executor. In the fall of 1883, he sold the property at public sale, in Boone county; at this sale Alice purchased some furniture, and some other personal property, of inconsiderable value, giving her and her husband's note therefor, with one C. C. Branham as surety. On the fourteenth day of March, 1884, the said John S. Thomas, who resided in the state of California, made and executed, in said state, a deed of gift for said five hundred dollars coming to him under the said will, to the defendant, J. Scott Branham, in trust for Alice Brockenbrough. This deed declared, that: "This conveyance and transfer are made to said Branham, as trustee for my sister, Alice, and he is hereby authorized to use said sum, either by loaning it, or investing it, in whole or in part, and paying out the interest or principal thereof in such manner and for such purposes, as in his (the trustee's) judgment, will best promote the comfort of Alice T. Brockenbrough and her children, taking to himself, as trustee, and holding the title of all property

bought with this fund, and allowing said Alice the use of such property, he being the sole judge of how this fund shall be used, with the single exception that no part of it shall be used to pay any existing debts, by whomsoever contracted."

On the twenty-second day of April, 1884, John S. Thomas, in the state of California, made and executed another deed to said J. Scott Branham, whereby he conveyed to him, in trust for said Alice, the residue of his interest, under his mother's will, which deed of gift contained the same trust provisions as the one above named. The said trustee, Branham, accepted the trust.

About the first of March, 1884, Mrs. Brockenbrough applied to the plaintiff to rent her farm, near Columbia, Boone county. The evidence tends to show, on the part of the plaintiff, that she was unwilling to rent her farm upon the personal security of Mrs. Brockenbrough and husband; that Mrs. B. represented that she would have ample means, under the provisions of her mother's will, to pay this rent; that plaintiff made inquiry of Todd, the executor, and from him learned that Mrs. B. would have sufficient income, under the will, to make such payment. She also made inquiry of the defendant, Branham, shortly afterwards, from whom she learned the same fact. Mrs. B. and husband had then gone into the possession of the farm. Neither Todd nor Branham would sign the notes for the rent. Plaintiff took the notes of Mrs. B. and husband, with the defendant, H. W. Yancey, as surety. The evidence further shows that after Branham came into possession, as such trustee, of the property so given by John S. Thomas, he bought certain work stock, wagon, and some farming implements, and placed them on the farm for the use of Mrs. B., as authorized by the deeds. He also paid for the property bought by Mrs. Brockenbrough at the executor's sale.

Todd had loaned out, at some time during his administration under the will, some money, designed

for the benefit of said Alice.    At the time of the institution of this sut he had not made his final settlement as executor.    The defendant, Alice, having paid only a part of the notes executed to plaintiff, and the balance remaining past due and unpaid, the plaintiff brought this action in September, 1885, to subject the property so bought by Branham, and the interest on the money loaned out by Todd, to the payment of plaintiff's claim. The circuit court gave judgment *in personam* against the makers of the notes, and further decreed that Todd, as trustee, pay over to plaintiff all interest which he might collect on the money loaned out for Mrs. B., provided the judgment was not satisfied out of the personal property bought and paid for as aforesaid by Branham, which the decree directed to be sold and applied to the satisfaction of the debt in question.    Todd, Branham, and Mrs. Brockenbrough have appealed.

S. TURNER, for the appellants.

I.    The sole question presented by the record is, whether or not the trust fund created by Mrs. Thomas' will, and the deeds from John S. Thomas, constitute a "separate estate," in the beneficiary ; and the solution turns upon the construction of these instruments.    It is conceded that if Mrs. Brockenbrough had in those funds, or the property bought with them by the trustee, Branham, what may properly be termed a "separate estate," she might charge such funds or property with her debts.    (1)    A married woman's legal estate consists of property as to which the title is vested in her, and which she can, with the concurrence of her husband, dispose of by deed or otherwise.    (2)    A married woman's "trust estate," technically speaking, as contradistinguished from her legal estate on the one hand and her technical "separate estate" on the other, is property held by trustees for her, under an active, vital, operative trust, usually created by will or deed, the title of the trust property, its management, investment, control, and the *jus disponendi* generally being confided to

the trustee, and the power of disposition withheld from the *cestui que trust.* (3) A married woman's "separate estate" consists of property, real or personal, held by her for her sole and separate use, free from the control of her husband, and not liable for his debts, but in respect to which the *jus disponendi* is vested in her solely, as between herself and husband. And such an estate may be held to her use by a trustee who is a mere depository of the title, with no active or continuing duty, and with power of disposition in the beneficiary; and this estate may be created by will, or deed, or parol, and it also, under our law, exists, in certain cases, by force of the statute. Rev. Stat., sec. 3296. The "estate" or interest of Mrs. Brockenbrough, in the trusts created by the will and deeds aforesaid, belongs to the second class of estates above mentioned, *i. e.*, they are technical trust estates as contradistinguished both from "legal" and "separate" estates. Even the powers and duties of the trustees are limited, restricted, and clearly defined. They are active, vital, and continuing trusts. The title, the control, the possession, the entire handling and disposition of the trust property or fund is given to the trustees, and all power of controlling or disposing of it is positively withheld, by both the will and the deeds, from the *cestui que trust.* The terms of the instruments named clearly define the objects of the trust, the intent of the donors, and the limitations of powers entering into the execution of the trust, and such instruments are to be strictly construed and pursued. Parsons on Cont. [7 Ed.] top page 120; Story's Eq. [6 Ed.] sec. 1276; Hill on Trustees, 175; *Boles v. Perry*, 61 Mo. 449; *Graham v. King*, 50 Mo. 22; *Kim v. Weippert*, 46 Mo. 532. A married woman cannot charge an estate with her debt, of which she has not the *jus disponendi*, for "charging" is "disposing" of it, and the power of disposition is the crucial test of a separate estate, and if the instrument creating the estate precludes her exercise of such power, then it is not a separate estate which she may charge. Schouler

on Husband and Wife, secs. 202, 225, 226; *Bank v. Taylor*, 50 Mo. 186; *Kim v. Weippert*, *supra*. The purpose of the donors was, as is clear, both from a fair interpretation of the instruments and the evidence in the case, to make a safe and lasting provision for Mrs. Brockenbrough and her children; and so the fund was confided to trustees to manage and control for her, giving her only the use of it.

II. In any aspect of the case the personal property bought by the trustee with money turned over by the trust deeds of Thomas, and which, therefore, is the *corpus* of the trust, could not, consistently with the restrictive clauses of those deeds, be subjected to sale for the satisfaction of the notes sued on, even conceding that the increment of that fund could be reached by the plaintiff's bill. *Cases supra*.

III. The alternative judgment against Mr. Todd, as trustee, is too palpably erroneous to require either argument or authority. It is a decree against him as a trustee; whereas, all the evidence in the case shows he was not a trustee. He was named in the will of Mrs. Thomas both as executor and testamentary trustee, for Mrs. Brockenbrough. At and before the institution of this suit, Mr. Todd had qualified, and was conducting the administration of his testatrix's estate. That estate had never been finally settled, and the trust fund, of which Todd was made trustee, had never been ascertained and severed from the body of the testatrix's estate. Todd, by a proper proceeding in the circuit court, had positively declined the trust, and asked the appointment of a trustee, to whom he might turn over the fund when the estate should be settled, and the amount of the fund ascertained. There could be no trust fund until the final settlement of the estate. Interest accrued and accruing, up to such settlement, was a part of the Thomas estate. Hence, at the time of the decree in this case, there was no trust fund in existence of which Mrs. B. was the beneficiary, and, as we have seen, there was no trustee, Todd having declined

it. Yet the court finds that Mr. Todd had accrued interest to the amount of sixty dollars in his hands; that it was the increment of the trust estate of Mrs. B., and then follows the alternative decretal order that Todd, as trustee, pay it over in satisfaction of the debt sued for. This, too, in the very teeth of the evidence, that this sixty dollars was interest accrued on outstanding and uncollected debts due the estate, and that the sixty dollars interest itself was outstanding and uncollected.

IV. The error of the court in entering up a personal or general judgment against Mrs. Brockenbrough is clear, and has often been so held in this state. *St. Louis v. Bernoudy*, 43 Mo. 552; *Higgins v. Pultzer*, 40 Mo. 152; *Bower v. Bower*, 40 Mo. 61.

V. The trustee and the executor have prosecuted this appeal in order that the nature and measure of trustee powers and duties in this case may be marked out; and whether the clear intention of the donor is to be carried out or not. They claim that donors can affix whatever restrictions they please upon gifts and bequests made by them, and that courts cannot make wills or deeds for them, nor annihilate such instruments by decrees when made.

W. J. & J. G. BABB, for the respondent.

I. The judgment of the circuit court should be affirmed, because appellants have not complied with rule fifteen of this court, requiring an abstract of the record. *Coy v. Robinson*, 20 Mo. App. 432; *Hyatt v. Wolfe*, 22 Mo. App. 191; *Hughes v. Van Stone*, 24 Mo. App. 637.

II. When judgment is erroneously rendered against a married woman it may be corrected by the appellate court. *Hemelreich v. Carlos*, 24 Mo. App. 264, and cases cited.

III. The judgment was properly rendered, since the court may give any relief consistent with the allegations in the pleadings. *Henderson v. Dickey*, 50 Mo.

161; Bliss Code Pl. (1 Ed.) chap. 12, sec. 161, *et seq.;* *Nelson v. Betts,* 21 Mo. App. 219.

IV. The judgment was proper in so far as it concerned R. L. Todd, as trustee of Alice T. Brockenbrough. As executor, he had assumed all the duties imposed upon him by the will of Eleonora S. Thomas, one of which was, that he should, as trustee, after paying debts and expenses of administration, loan out the share of money coming to Alice T. Brockenbrough. He had made his second annual settlement and had paid these debts and expenses. He had proceeded to pay the specific legacy of five hundred dollars to J. Scott Branham, the other trustee, together with five hundred dollars or more, being half of the residue in his hands which would have been paid to John S. Thomas but for the deed conveying the same in trust for Mrs. Brockenbrough. He had loaned the share of Mrs. Brockenbrough and interest was accumulating thereon. He was in no position to disclaim the trust. Acting in the double fiduciary capacity of executor and trustee, the law presumes that the transfer of funds was made from executor to trustee whenever the duty to make such transfer arose. 1 Perry on Trusts (3 Ed.) chap. 12, sec. 38; *In the final settlement of Wood,* 71 Mo. 626.

V. The trust property in the hands of Branham was liable for this debt. The deeds from John S. Thomas allowed the trustee to use the principal as well as the interest. Branham had instructed the plaintiff to rent the farm to Mrs. Brockenbrough, stating that there would be enough to pay the rent out of the property coming from John S. Thomas. He considered the use of the farm for that year a necessity, as Mrs. Brockenbrough and her children had nowhere else to go. He assented to their use of the farm as a home during the entire year. He had not only assented to the creation of the debt, but had ratified and assumed it as trustee for Mrs. Brockenbrough.

PHILIPS, P. J.—We will first consider this case with

reference to so much of the property in question as came to Mrs. Brockenbrough under the will of her mother. The first important fact to be noted is, that the interest created for Alice under this will is only a life estate. Only the usufruct of the property, in whatever form the trustee may put it, enures to her benefit.  The title to the property is first in Todd as executor, and then as trustee.  There is no power of alienation, disposition, or right to manage and control by Alice at any time nor under any circumstances.  The whole power of control, management, and conversion of the property is lodged by the testament in the testamentary executor, or trustee, during the life of Alice, with remainder to her children, and, in the event of the failure of such issue, to her brother, John S. Thomas.  The *cestui que trust* has no voice in the matter.  How, then, could she create an equitable charge upon this property, as of her separate estate, which a court of equity could enforce?  The idea runs, as a thread of gold, through the whole doctrine of a married woman creating a charge by her contract, which a court of equity will enforce, against her separate estate, that it is the incident of the *jus disponendi* by her as to such property, particularly so as to personalty.

Bishop, in his work on Married Women (vol. 1, sec. 870), explicitly predicates the capacity of the *feme covert* "to charge the estate with a specific debt or agreement," as "the lesser power" growing "out of the power which she has to dispose of her separate estate, or of the income thereof."  And in section 872, he further says : "It is but reiterating, in another form of words, to say, that if a married woman has the authority to convey her separate estate, she can, therefore, pledge or charge it with a debt or other engagement, whenever she employs express terms, or those which necessarily carry with them this intent."  This is so recognized by the following authorities : 1 Lead. Cases Eq. 399 ; Story Eq., sec. 1397 ; *Whiteside v. Cennon*, 23 Mo. 457.  I am aware of the language and ruling in *Martin v. Colburn*, 88 Mo. 229, where it was

held, that, as to real estate, in which the *feme covert* has a separate estate, the husband must join to pass the estate. But that does not affect the principle under discussion; as the co-action of the husband is but the restriction placed by the statute concerning conveyances upon the mode of alienation by the wife as to her realty. It in no other wise touches the quality of her estate; the *jus disponendi* still remaining, only the mode is different as to realty. But in the case at bar the title to the property, mere personalty, as to which she can convey her separate estate without the coöperation of her husband, was by the will vested in the trustee, to be held and applied by him in a specified manner and limited extent, with no power or right in the *cestui que trust* to dispose of it in any manner.

The courts universally recognize that the power of appointment, which is but the synonym of creating a charge or pledge, may be restrained by the language of the instrument creating the estate. Schouler Dom. Rel., secs. 131–139; 1 Bish. Mar. Wom., secs. 846-859-868. As said by McKinney, J., in *Litten v. Baldwin*, 8 Humph. 209-214: "It is laid down as the settled doctrine upon this subject that the extent of the power of a married woman over her separate estate depends upon the terms of the deed or settlement; she is to be regarded as a *feme sole* only so far as the deed has expressly conferred upon her the power of acting as such; she can exercise no authority or control over her separate property, except such as is specially given in the deed, and only in the mode therein prescribed."

So Ch. Kent, in *Church v. Jacques*, 3 Johns. Ch. 77–113, asserts that when the estate of the wife is created by written instrument, she "is to be deemed a *feme sole, sub modo*, or to the extent of the powers clearly given by the settlement." He further declared, that when the instrument creating the trust "says that she is to receive from her trustee the income of her property, as it from time to time may grow due, it does not mean that she may, by anticipation, dispose at once of all the

income. Such a latitude of construction is not only unauthorized by the terms, but it defeats the policy of the settlement, by withdrawing from the wife the protection it intended to give her."

Without going so far as to assert that Mrs. Brockenbrough could not by contract create a charge on the already accrued interest, on the trust estate in the hands of the trustee, which the trustee would be bound to pay over to her, I maintain that she cannot, in the manner claimed by the plaintiff here, thus dispose of, by way of equitable charge, the income to accrue in the future, for two reasons: First, it would be by way of anticipation, in contravention of the scheme and purpose of the donor; and, second, because no charge upon a separate estate can arise where the estate itself is not *in esse* at the time of the contract. The evidence in this record wholly fails to show that, at the time the notes in question were executed by Mrs. Brockenbrough, or even at the time the suit was brought, there was one dollar of accrued interest due on the trust fund, much less that any such interest was then in the hands of the trustee. On the contrary, the proof was, that even at the time of entering the decree the interest sought to be charged was outstanding, merely owing by the debtor, and might never be collected.

It is true that the doctrine of anticipation is more peculiarly an English rule, and is predicated usually on express provisions of the creative instrument; but it, nevertheless, may arise in a case where there is no such express provision, as where, from the whole tenor and purpose of the settlement, it is apparent that it was the design of the donor to create an annuity for the benefit of the wife and her children, during her natural life, and at her death to go to her children, and to no other use. *Freeman v. Flood*, 16 Ga. 528 ; 2 Perry on Trusts, sec. 670 ; *Church v. Jacques, supra.* Under the provisions of the will, Todd, the executor and trustee, could not be compelled to pay on an order, by anticipation, the interest thereafter to accrue. It would be

contrary to the expressed intent of the testatrix to provide an annuity for her daughter and family. The trustee could pay the interest for no other purpose or use.

Again, the action to subject the separate estate of the *feme covert* to the payment of her debts is essentially a proceeding *in rem.* It is to reach specific property, which equity implies she intended to pledge or charge with the payment of the debt contracted. The petition in such action must set out the property so intended to be charged; and, of consequence, that property must be in existence, so that if execution went *instanter* there would be a *res* for the judgment to operate upon. Neither the petition nor the decree could be by anticipation of something yet to come into being. The very idea that a contract made by a *feme covert,* which at law is void for the lack of power to make a contract binding *in personam,* may yet hold good in equity, is bottomed on the fact of an existing separate estate intended to be pledged by her to its satisfaction. So, if the proposition could be maintained that such a contract could be enforced in equity against a future acquired separate estate, it would not be necessary that the *feme covert* should have any separate estate at all at the time of the execution of the contract, or even expect that she would have any thereafter.

The notes in suit, for example, became due, respectively, in December, 1884, and March, 1885. A cause of action arose on them at the instant of their maturity. Had suit then been brought, and Todd had not even loaned out any money, and no interest had then accrued, on what would a judgment against Mrs. B. have operated? There would have been no *res.* How, then, could the court find by its decree that, at the time of the making of the notes, Mrs. B. had a separate property which she intended to charge with their payment, and proceed to make a decree *in rem?* How could a petition describe a thing not yet created? To say that

it is a continuing contract, and may be enforced against any subsequently-acquired separate estate of the *feme covert*, would, in my opinion, be to make the equitable charge or pledge, which is the mere incident of the debt, independent of the debt itself. And that would be violative of the maxim, that "the sprout is to savor of the root and go the same way." If that property ever was pledged, it was at the instant of making the contract; and if that contract was void *in personam*, but received vitality *in rem*, the *res* must have existed at the time of making the contract, otherwise it would have died in its birth; and I know of no supernatural power of equity to vitalize the dead. The principle contended for is recognized by Sherwood, J., in *Boatman's Savings Bank v. Collins*, 75 Mo. 280, when he says: "*A feme covert, possessed of a separate estate*, may, by giving her promissory note, bind or charge such separate estate. If not possessed of it when she gave the note, there could, *a fortiori*, be no charge upon it."

So it is said, in *Coon v. Brook*, 21 Barb. 548: "In such actions the complaint should show the nature of the debt, and that the wife had a separate estate when she contracted it; and the nature, situation, and value of such estate, or of that portion thereof she has at the time the action is commenced; and that the wife made, or intended to make, the debt a charge upon such estate at the time she contracted it. A married woman can only incumber or charge property which she owns at the time she contracts debts. Her promises to incumber future acquisitions are void. The creditor can only reach property she owns when the debt is made. He cannot touch what she may afterwards acquire."

Our conclusion, therefore, is, that so much of the decree as pertains to the defendant, Todd, is not maintainable.

II. The remaining question is as to that part of the decree which subjects to the debts in controversy the personal property purchased by Branham, as trustee, for Mrs. Brockenbrough. The money with which Bran-

ham made this purchase came by virtue of the deed of trust made to him by John S. Thomas. The funds so placed in his hands were essentially trust funds. He took and held them subject to all the limitations and restraints placed upon them by the donor in the trust instrument. Like a charity, a gift for a particular purpose and specified use cannot be altered or diverted by the trustee or beneficiary. It is precisely what the deed of its creation has made it. It must be accepted and applied upon the precise terms on which it was given, and no concurrence among the donees can operate to transfer or apply it to other purposes, or in any other mode than that prescribed by the donor. *McRoberts v. Moudy*, 19 Mo. App. 26; 1 Perry on Trusts, secs. 251, 254. One thing is certain, that if the notes, as the evidence indicates, were executed before the deeds from Thomas had been delivered to Branham, the trust fund and the property bought therewith were not subject to this debt, for the palpable reason that the deed of gift expressly declared "that no part of it shall be used to pay any existing debts by whomsoever contracted." It would be a clear perversion of the trust fund to apply it to the payment of an antecedent debt. The evidence is that out of the trust fund Branham bought, at least, a part of the personal property in question, after the notes were executed. No charge could, therefore, have been created as to this property by the contract, as it was not then in existence. And further, by the express terms of the trust deed, the trustee was to take to himself, as trustee, and hold, the title of all property bought, "allowing Alice the use of such property, he being the sole judge of how this fund shall be used."

It was not, therefore, competent for the *cestui que trust* to make any contract by which the title to this property could, by the decree of any court, be taken from the trustee; thereby destroying the very *corpus* itself, out of which it was the plain design of the donor to make provision for the continuing maintenance of his sister and her children. By selling the property itself, as

the decree directs, the court would kill the goose that lays the golden eggs, and thwart the beneficent object of the donor.

It is difficult, if not impossible, to say from the evidence or the decree, whether any, or what portion, of the property bought by Mrs. Brockenbrough at the executor's sale was embraced in the decree of the court. If, in fact, it covers any or all of that property, there are other insurmountable legal obstacles in the way of upholding it.

At common law the property bid in at that sale by the wife would have become, *jure mariti*, the property of the husband, in which she would have no separate estate. *·Walker's Adm'r v. Walker*, 25 Mo. 375. Under the married woman's act (Rev. Stat., sec. 3296), to constitute it her separate estate, it was not enough that she should have bought it, but it was indispensable that the proof should go further and show that it was paid for out of her separate estate. *McCoy v. Hyatt*, 80 Mo. 130. At the time the notes in suit were given, the property bought at the executor's sale had not been paid for. There was only a promise to pay. She then had no separate estate in the property. Afterwards, the trustee, Branham, paid off the purchase money out of the trust fund in his hands. By the express provision of the trust instrument under which Branham took this fund, he was prohibited from applying it to the payment of any such existing debt. No matter what his antecedent parol understanding with the donor may have been, it was merged in the expressed provision of the trust deed prohibiting him from so using it. If he departed from the obligations and limitations of his office, that gave no creditor of the *cestui que trust* the right to seize upon the property contrary to the command of the trust instrument. . Especially ought not a court of equity, whose peculiar province it is to protect and preserve the trust fund, to lend its aid to the wrongful perversion of it. However just may be the claim of the plaintiff to have payment for the use of her farm, and

however strong the moral obligation upon Mrs. Brocken-brough to make good her undertaking, the established rules of law and equity, founded in the experience and wisdom of lawgivers and jurists, are inexorable.

This being a decree in equity, which, unlike a judgment at law, is divisible ( *Dickerson v. Chrisman*, 28 Mo. 134 ), the judgment against Mrs. Brockenbrough being *in personam* is manifest error, and the same is reversed, as is also the judgment *in rem* against the defendants, Todd and Branham. The judgment as to the other defendants, not appealing, remains intact. All concur.