# MATTIE A. McMUNNIGAL v. J. W. AYLOR et al., Appellants.

### Division Two, May 14, 1907.

1. **CONVEYANCE TO WIFE: Fraudulent: Her Money.** Money given by a father to his married daughter in 1878 was her own property; and if it was invested in a house and lot on which they lived that became a homestead; and if they afterwards sold it, and he took the money and put it in a bank, and then with that money bought some lots in his own name, it was competent for him five years later, after a house was erected thereon, in recognition of his obligation to her, to convey the lots to her; and he violated no principle of good morals or equity in so doing.

2. ———: ———: **Solvency.** A deed by a husband to his wife, at a time when he was solvent, in recognition of the fact that her money appropriated by him had been used in purchasing a lot and erecting a house thereon, is valid, and even though at that time he owed a debt, which afterwards ripened into a judgment. He had a right to make a reasonable provision for his wife and family.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*Frank L. Forlow* for appellants.

(1) The contracting of the debt, the after-acquiring of property and the fraudulent conveyance of the property, the debt having been contracted prior to the acquiring of the lots in controversy, and being the very means used in the purchase afterwards, made McMunnigal's property subject to the execution of defendant Aylor. Bartels v. Kinninger, 144 Mo. 370. (2) The conveyance made by McMunnigal to his wife was without consideration, and was void as to this debt due Aylor, he being a creditor prior to that time, without regard to the purpose or intent with which it was made. Boatman's Savings Bank v. Overall, 16 Mo. App. 10; Oberneir v. Treseler, 19 Mo. App. 519; Loehr v. Murphy, 45 Mo. App. 519; Snyder v. Free, 114 Mo. 360. It was shown that it was the husband's property, bought with his means, acquired by him, by not paying Ellis the purchase price of the property traded for the property in controversy; the transaction was fraudulent as to existing creditors, of which defendant Aylor was one. Lander v. Ziehr, 150 Mo. 403. (3) Plaintiff claimed in the petition filed that she had paid the five hundred dollars for the purchase price of the lots in controversy, out of her own means. But the undisputed evidence in the case shows that the lots were paid for by her husband by getting Ellis to accept an order for that

amount, and deeding to him other property, which he traded for the property in controversy, receiving in addition thereto $300 in cash.

*Thomas & Hackney* for respondent.

(1) The undisputed evidence shows that at the time of making the deed to plaintiff for the property in controversy, the husband of the plaintiff was solvent and after making this deed had ample property to pay his debts over and above his exemptions; and in such condition he had the right to make provision for his wife, and the provision being a reasonable one, the conveyance could not be set aside at the instance of an existing creditor, even though the husband subsequently became insolvent. Lang & Son v. Williams, 166 Mo. 1; Johnson v. Murphy, 180 Mo. 597; Bank v. Simpson, 152 Mo. 638; Fehlig v. Bush, 165 Mo. 144; sec. 4340, R. S. 1899. (2) She having furnished the purchase money to buy this lot, and to improve it, she was the equitable owner of the lot. R. S. 1899, sec. 4340; Clowser v. Noland, 133 Mo. 221; Scrutchfield v. Sauter, 119 Mo. 615; Bartlett v. Umfred, 94 Mo. 533; Pitts v. Sheriff, 108 Mo. 110. (3) The answer of defendant Aylor denied the execution of the deed by defendant McMunnigal to his wife, the plaintiff. No fraud in the execution of this deed was charged in the answer. The defendant is in no position to assail this conveyance as being fraudulent.

GANTT, J.—This was a suit in the circuit court of Jasper county to obtain a perpetual injunction against J. W. Aylor, the plaintiff in the judgment and the sheriff in an execution under said judgment, from selling two certain lots in Webb City, on the ground that such sale would cast a cloud upon the title of the plaintiff in and to said lots and hinder and prevent her from selling and disposing of the same, and against P. H.

McMunnigal, the husband of the plaintiff, to have the legal title in and to said lots divested out of said husband and vested in the plaintiff and to adjudge and decree that he had no interest in said premises subject to levy and sale under said execution.

In substance the petition states that on the 6th day of November, 1889, the plaintiff and P. H. McMunnigal were husband and wife and that plaintiff purchased with her separate money and means for the sum of five hundred dollars lots 73 and 74 in Byers & Ball's addition to Webb City; that the defendant P. H. McMunnigal transacted the business for the plaintiff in the purchase of said property, and without the knowledge and consent of plaintiff took the deeds to said lots in his own name, and that afterwards on the 9th of November, 1894, the defendant P. H. McMunnigal received a large amount of money, the separate property of plaintiff, to-wit, fifteen hundred dollars; that after the purchasing of said lots on November 6, 1889, there was erected thereon a dwelling house with the money and means of this plaintiff, and she and her husband took possession thereof and occupied the same as their homestead; that the deed to the real estate in the name of the defendant P. H. McMunnigal was recorded in the recorder's office in Jasper county, in 1889. Plaintiff states that on the 9th of November, 1894, her husband was wholly solvent and owned and held a large amount of property and ready money and was not indebted to any person excepting this plaintiff, and that the money and property owned by said P. H. McMunnigal over and above the amount he owed plaintiff, and his exemptions, amounted to the sum of —— thousands of dollars; that on the 9th of November, 1894, and while plaintiff and defendant were occupying the said real estate, the said P. H. McMunnigal in payment of the moneys which plaintiff had furnished to purchase said lots, and the moneys which he owed plaintiff, and fur-

ther as a provision for the future support and mainte-
nance of the plaintiff as his wife, had executed and de-
livered to this plaintiff a warranty deed, duly executed
and acknowledged, by which he conveyed said lots di-
rectly to plaintiff without the interposition of the
third party, and that since said date her husband has
never had any beneficiary or equitable interest in said
real estate, but the same was and ever since has been
and now is the separate property of plaintiff. Plain-
tiff further states that in the year 1895, the defendant
Aylor recovered in the circuit court of Jasper county,
at Joplin, a judgment for six hundred and some dollars
against defendant P. H. McMunnigal, which, as far as
plaintiff is informed and believes, remains in full force
and effect, and plaintiff avers that the cause of action
upon which said judgment was obtained did not accrue
until long after the execution and delivery to plaintiff
by the said P. H. McMunnigal and the recording of the
aforesaid deed. Plaintiff states that afterwards to-wit,
in 19--, the defendant Aylor, caused an execution to be
issued on the said judgment against P. H. McMunnigal
and caused the same to be levied on the said lots 73 and
74 in Webb City as the property of the defendant, P.
H. McMunnigal, and was at the institution of this suit,
and still is, insisting, urging and requiring the sheriff
of Jasper county to sell the same as the property of the
said defendant P. H. McMunnigal, and unless he is
restrained therefrom by this court said levy and sale
which may be made thereunder will cast a cloud upon
the title of plaintiff and will hinder and prevent her
from selling and disposing of the same, wherefore she
prays the court to adjudge and determine that plaintiff
is the equitable owner in fee simple of the said real
estate and that her said husband has no right, title or
interest in said premises subject to sale or
execution, and that the court divest the legal
title out of the said P. H. McMunnigal and

vest the same in plaintiff and adjudge and decree that her said husband has no interest in said premises subject to levy and sale under execution issued on said judgment in favor of said defendant J. W. Aylor, and that said defendant Aylor be perpetually enjoined and restrained from levying upon and selling said premises or causing the same to be done under said execution, or under any execution hereafter to be issued on said judgment, and for all proper relief.

The defendant for answer denied each and every allegation in the petition except as herein afterwards specifically admitted. Defendant admitted that on the 6th of November, 1889, plaintiff and defendant P. H. McMunnigal were husband and wife, and the lots 73 and 74 in Byers & Ball's addition to Webb City were purchased by P. H. McMunnigal and the deeds taken in his name and that on the 25th day of June, 1895, defendant obtained a judgment against the defendant P. H. McMunnigal in the circuit court of Jasper county for the sum of $697, which with interest and costs remains unreversed and in full force and effect. Admits that he caused an execution to be issued on said judgment and directed and caused a levy to be made upon the lots described in the petition and requested the sheriff to sell said premises as the property of defendant P. H. McMunnigal. Further answering defendant states that said lots were purchased with the money and means of the defendant McMunnigal, and that the debt for which the judgment was entered in favor of defendant Aylor was due from the said defendant P. H. McMunnigal as a part of the purchase price of lot 13 in Webb's First Addition to Webb City, which said property was traded in part for lots 73 and 74 in Byers & Ball's addition; that the plaintiff and P. H. McMunnigal lived upon lot 13 in Webb's Addition.

To this answer plaintiff filed a reply denying each

and every allegation, and prayed judgment as in her petition.

Upon a trial in the circuit court, the court rendered judgment for the plaintiff as prayed in her petition, and after unsuccessful motions for a new trial and in arrest of judgment, the defendants appealed to this court.

On the part of the defendant Aylor the contention is that the evidence shows that the debt which was due him and upon which he obtained the judgment under which the execution was levied upon the lots in controversy, had been contracted by the defendant P. H. McMunnigal, the husband of plaintiff, in November, 1888, and that P. H. McMunnigal did not acquire the property in controversy until November, 1889, a year after the debt was contracted, and that the deed made by said P. H. McMunnigal on the 9th of November, 1894, to his wife to this property, was made out at a time when the defendant Aylor was trying to collect his debt, and was an effort to place the said property beyond the reach of his creditors and was fraudulent and void. And that the conveyance by P. H. McMunnigal to his wife was without consideration. On the other hand, the evidence on behalf of the plaintiff tended to prove that in the year 1878 plaintiff received four hundred dollars in money from her father, and this money was used in purchasing lot 85 in Cassil's Addition to Carthage, and in building a house and making other improvements thereon, and that this lot was sold to Thomas A. Payne on June 9, 1890, for nine hundred dollars, the proceeds of said sale being delivered to the plaintiff as her property; that after the sale to Payne this money was kept by the plaintiff in her possession for a considerable time and was afterwards delivered by her to her husband to be deposited in the bank at Webb City, and the money was placed by him in said bank, but in his

own name; that this money was afterwards checked out by him in payment for materials and labor in building a seven-room, two-story house on the lots in controversy, which were taken in the name of the defendant P. H. McMunnigal. Matters stood in this shape until November 9th, 1894, when the husband made a deed to the plaintiff conveying these lots to her in consideration of the moneys turned over by her to him, and used as aforesaid for the purpose of providing her with a home. And that at the time of making this conveyance the only debt owed by the husband consisted of the debt to the defendant Aylor, amounting then to less than seven hundred dollars, and about ten dollars of small outstanding bills, and the debt due to the plaintiff; that said P. H. McMunnigal at that time owned another lot in Webb City on Pennsylvania avenue, for which he had been offered and had refused nine hundred dollars, and that he had over three thousand dollars in money in Webb's bank in Webb City, and had bought the Webb City Iron Works and afterwards took J. C. Stewart in as a partner and after operating the same for a number of years, he had just sold his interest in the Iron Works to Mr. Stewart, and had put this money in the bank. The testimony tends to show that Webb's bank was still doing business in Webb City and J. C. Stewart was living in said city and the testimony of the defendant P. H. McMunnigal that he had the said sums of money deposited in said banks at that time, was not controverted by any evidence on the part of the defendant Aylor on the trial, and none of the officers of Webb's bank were called to disprove the testimony of the defendant P. H. McMunnigal, and neither was the said J. C. Stewart called as a witness to disprove the testimony in regard to the moneys alleged to have been received by him about that time.

The debt upon which defendant Aylor's judgment was obtained originated in an order given by P. H. McMunnigal to James R. Ellis on J. C. Stewart for five hundred dollars in payment for lot 13, in Webb's First Addition to Webb City in October, 1888. This order was assigned by Ellis to the defendant J. W. Aylor, in part payment for some property Ellis had purchased from him. This order was lost in some way. Afterwards at the June term, 1895, the defendant Aylor brought suit on said lost order, in which he alleged that in November, 1888, he presented said order to said Joseph C. Stewart and demanded payment thereof, and that the said Stewart promised and agreed to pay defendant Aylor said five hundred dollars and take up said order as soon as the said P. H. McMunnigal secured said Stewart for the amount thereof, and that said P. H. McMunnigal neglected and refused to arrange with said Stewart for the payment of the same and that on divers times and occasions the said Aylor had demanded of the said P. H. McMunnigal payment of the said order and the said McMunnigal had neglected and refused to pay the same. Judgment was obtained by the defendant Aylor in the circuit court for $697, and an appeal was taken to the Kansas City Court of Appeals and the judgment of the circuit court was affirmed. The evidence tended to show that notwithstanding this order was given by defendant P. H. McMunnigal, in 1888, no suit was brought thereon until 1895, and that the instrument was lost at that time. P. H. McMunnigal testified that at the time he made the deed to the property in suit, he thought that this matter had been settled or paid by Stewart in the settlement in the matters between him and Stewart, and that he had no idea that the said debt was still outstanding. And the testimony on the part of the plaintiff was that she was entirely ignorant of the existence of said claim.

Defendant Aylor insists that the testimony of the plaintiff and McMunnigal as to the way in which the plaintiff acquired the means with which the lot in Carthage was purchased and as to her disposition of the proceeds of that lot when it was sold, is entitled to little consideration by this court, but it must be borne in mind that these witnesses were before the circuit court, and lived in the same vicinity in which the judge of that court resided, and that there was no attempt made to disprove her testimony as to the gift of the original four hundred dollars, which was applied to the acquisition of the lot in Carthage. That lot was acquired as a homestead long prior to the accruing of the debt on which the judgment of the defendant Aylor was obtained. And whether we view it as the property of the plaintiff or that of her husband, it appears that the proceeds of that lot went into the lot and the buildings thereon, which defendant Aylor seeks to subject to his judgment and execution. Defendant Aylor insists that the deed from P. H. McMunnigal to the plaintiff in this case was fraudulent as against his judgment and execution, on the ground that it was purely voluntary and as against his prior debt was void. The four hundred dollars given to the plaintiff by her father in 1878 was her own property, and it was perfectly competent for her and her husband to treat it as such, and if he invested the same in the lots in suit and afterwards conveyed the same to his wife in recognition of his obligation to her, he was violating no principle of good morals or equity in so doing, as has often been decided by this court even when the law would have vested the personal property of the wife in the husband. [McCoy v. Hyatt, 80 Mo. 130; Clark v. Clark, 86 Mo. 114; Botts v. Gooch, 97 Mo. 88.]

But conceding that the testimony shows that P. H. McMunnigal did invest the plaintiff's money in the lot in Carthage, and took the deed thereto in his own name,

and afterwards took the deeds to the lots in controversy in his own name and did not keep his wife's money separate from his own, still, we think the decree of the circuit court should not be reversed because the testimony shows that at the time he made the conveyance of these lots, to-wit, in 1894, to his wife, he was solvent and had ample property to pay his debts over and above his exemptions, and owed no debt of any consequence except the order which he had given to Ellis, which at that time was lost, and he supposed had been settled. Under these circumstances, he had the right to make a reasonable provision for his wife by conveying to her the lots in suit for a home in recognition of the fact that her money had largely contributed to the purchase price thereof, and of his debt to his family. While this court will always scrutinize transactions between husband and wife when they come into conflict with the claims of creditors, it has uniformly refused to set aside a conveyance from husband to wife as fraudulent when the evidence disclosed that the husband was solvent at the time, and the provision made for his wife was reasonable even to existing creditors. In this case, the indebtedness of P. H. McMunnigal amounted to seven hundred dollars only over and above what he owed his wife, and at that time testimony tended to show that he had at least three thousand dollars on deposit in Webb's bank in Webb City. No effort was made by the defendant Aylor to show that the indebtedness of the husband was other than he had testified to and nothing would have been easier than to have proven by the officers and the books of the Webb bank, which was located for all practical purposes in the same city in which the court was held, that the defendant P. H. McMunnigal did not have said money to his credit in said bank. Under such circumstances, as was said in Lang & Son v. Williams, 166 Mo. l. c. 6, "he could afford to be generous to his wife without being unjust

to the creditors." And we may add in this case, it was his duty to be just to his wife whose means had assisted him in acquiring the homestead. [Bank v. Simpson, 152 Mo. 638.] In Johnson v. Murphy, 180 Mo. 1. c. 614, this court approved the rule laid down in 14 Am. and Eng. Ency. Law (2 Ed.), 301, as follows: "The validity of voluntary conveyances as regards existing creditors is to be determined, therefore, by the answer to the inquiry: Is the donation such as a prudent man, perfectly acquainted with his financial condition, actuated by an honest purpose, and having due regard to the rights of his creditors, would have made under the circumstances? If at the time of the voluntary conveyance the donor is insolvent, the deed is fraudulent, and evidence that no fraud was intended cannot change its character. So, if the execution of a voluntary conveyance, however meritorious in itself, leaves the donor with insufficient property to meet existing liabilities, it is fraudulent and void. Or, if the donor at the time of the execution of a voluntary conveyance, though not actually insolvent, is in embarrassed circumstances which eventually end in insolvency, the conveyance is void. If, on the other hand, the donor was at the time of the voluntary conveyance perfectly solvent and retained sufficient means to pay his debts, ought the conclusion of a fraudulent purpose to be drawn from the mere fact of their existence at the time and the donor's subsequent inability to discharge them?" After giving the arguments pro and con on the proposition, winds up by saying, "It is held in a majority of the jurisdictions that if the donor at the time of the gift was in prosperous circumstances and possessed ample means to pay his debts, and the gift was a reasonable one according to the purpose for which it was made, it is valid and will not be vitiated by the subsequent insolvency of the donor not produced by causes existing at the time of the conveyance." The decisions of this

court fully sustain the conclusion reached by the author of the article in the encyclopedia above quoted and are collected by Judge BRACE in Johnson v. Murphy, supra, at page 615.

Applying this doctrine to the facts in this record, we think that the circuit court was amply justified in refusing to hold the deed from her husband to the plaintiff to the lots in controversy was fraudulent, and in decreeing title to her as against her husband and the defendant Aylor, and in perpetually enjoining the sale thereof for the debts of her husband, and the decree is accordingly affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.